[No. H036240. Sixth Dist. Nov. 21, 2011.]

JANE DOE, a Minor, etc., Plaintiff and Respondent, v.
UNITED STATES SWIMMING, INC., Defendant and Appellant.

**COUNSEL**

Weil & Drage, Jean A. Weil, Anthony D. Platt and Sheila K. McDonald for Defendant and Appellant.

Corsiglia, McMahon & Allard, B. Robert Allard and Jeffry W. Lochner for Plaintiff and Respondent.

## Opinion

**ELIA, J.**—Defendant United States Swimming, Inc. (U.S. Swimming) appeals from an order directing it to pay monetary sanctions in the amount of $5,250 to plaintiff Jane Doe. The superior court found that U.S. Swimming, without substantial justification, failed to comply with its August 6, 2010 discovery order and opposed plaintiff's motion to compel compliance with that order. (Code Civ. Proc., § 904.1, subd. (a)(11), (12).)[1]

On appeal, U.S. Swimming argues that imposition of monetary sanctions was an abuse of discretion since it had complied with the August 6, 2010 discovery order and the court refused to confirm this by conducting an in camera inspection of an unredacted version of the documents produced. No challenge is made to the amount of the sanction.

We affirm.[2]

### A. *Background*

On July 2, 2010, plaintiff filed a motion for an order compelling further answers to deposition questions and production of documents and for an order imposing monetary sanctions for discovery abuses. Plaintiff's notice of deposition was directed to the person most qualified to testify on U.S. Swimming's behalf regarding claims or complaints of sexual harassment or abuse by its coaches during the prior 10 years and demanded that the deponent produce documents in its possession or control concerning those claims or complaints.

The memorandum of points and authorities in support of the motion stated that plaintiff's "lawsuit involves a claim for damages resulting from the sexual molestation and abuse of plaintiff, a 15-year-old female, by her swim coach, Andrew King" who was employed by U.S. Swimming. It indicated that there were tort claims against U.S. Swimming for "its direct negligence in hiring, training, control, supervision, and retention of defendant King."[3]

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] U.S. Swimming's motion to strike the respondent's brief or portions thereof is denied. Plaintiff Doe's request for sanctions and attorney fees pursuant to California Rules of Court, rule 8.276, which is presented in its respondent's brief, is not properly before this court. (See Cal. Rules of Court, rules 8.54, 8.276(b).)

[3] The pleadings are not part of the appellate record.

The memorandum stated that King had been arrested and sentenced to a 40-year prison term and during his trial it had been discovered that he had "a long history of molesting underage female swimmers placed under his control by U.S. Swimming." The memorandum asserted that "the fundamental question of what U.S. Swimming knew about the problem of coach abuse at (and prior to) King's abuse of plaintiff, [was] of the utmost relevance" and that the existence of "[s]imilar claims or complaints of coach abuse" that were communicated to U.S. Swimming were "central to the issues in this case." It stated: "Logically, the higher the incidence of prior wrongful conduct [by coaches], the more care that should be devoted to the problem" by U.S. Swimming.

On July 9, 2010, defendants U.S. Swimming and Pacific Swimming moved for a protective order excluding from production documents pertaining to "swim coaches who have merely been alleged to have engaged in sexual misconduct, but such allegations have not been proven, and no due process has been given to those coaches." In the alternative, defendants requested a limited in camera disclosure. They also filed opposition to the motion to compel answers and production.

On August 6, 2010, the court granted plaintiff's motion to compel and granted, in part, the motion for a protective order. The court ordered U.S. Swimming to "produce its person most knowledgeable for further testimony and produce the documents requested in the deposition notice . . . ." It required U.S. Swimming to identify any documents withheld on the basis of attorney-client privilege or work-product doctrine. Its protective order authorized U.S. Swimming to "redact any identifying information regarding the accused coaches and complainants from any documents produced." The court denied the plaintiff's request for a monetary sanction against U.S. Swimming or its attorneys.

In response to the August 6, 2010 order, U.S. Swimming produced heavily redacted documents. On September 13, 2010, plaintiff Doe moved to compel U.S. Swimming to comply with the court's August 6, 2010 order. Plaintiff asserted that in response to that August 2010 order, "defendant provided plaintiff with 1,864 documents in no logical order and each and every specific necessary for assembling the documents in a logical manner (either by incident, complaint number, date, region, team, etc.) has been redacted as has virtually all other information necessary for plaintiff to determine, among other things, 1) the date of the complaint; 2) the nature of the complaint; 3) the swim club and/or regional swim committee involved; 4) witnesses to the incident; and 5) what was done in response to the complaint, if anything." Plaintiff alleged that "the documents produced were not produced in a manner consistent with the ordinary course of business and the information

redacted from the documents greatly exceeds the court order limiting any redaction only to that which specifically identifies the complainant or coach involved."

Exhibit D to the supporting declaration of plaintiff's attorney, Robert Allard, consisted of over 150 pages of redacted documents excerpted from the documents produced by U.S. Swimming. Numerous pages of member and club "lookups" were redacted to omit information related to members and clubs. The redacted documents in the exhibit included but were not limited to e-mail messages, faxes, and letters, memoranda, organizational rosters, a membership list, witness statements, grand jury letters, and miscellaneous official records. The redactions encompass the names and contact information of persons other than accused coaches or complainants including other coaches, witnesses and swim officials, information related to local swim committees and swim clubs, geographic locations, and police department, school, school district, and camp names. On documents regarding complaints before the U.S. Swimming's National Board of Review, the name and contact information of the local swim committee (LSC), the LSC general chair, and the club were blacked out as well as the names of the complainants and respondents. Pages apparently consisting of the record on appeal from a decision of the National Board of Review were blank except for a typed label identifying the omitted documents. Similarly, U.S. Swimming also produced blank pages with a typed label stating "internal correspondence" and "legal correspondence." The redacted documents included newspaper articles, Yahoo! search results, information copied from an Internet news site, and a complaint filed in Texas.

Defendants U.S. Swimming and Pacific Swimming filed opposition to the motion to compel compliance. They asserted that they had fully complied with the court's August 6, 2010 order and, consequently, were acting with substantial justification in opposing the motion to compel compliance. The opposition papers did not request an in camera inspection of the unredacted documents but rather stated that defendants were "fully prepared to re-produce the subject documents in whatever manner the Court determines is proper" if the court determined defendants' interpretation had been incorrect.

The declaration of the attorney responsible for overseeing the redactions, Jennifer Bielak, was filed in support of U.S. Swimming's opposition. She explained her interpretation of the protective order. She cited the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g) and the implementing federal administrative regulation, part 99.3 of title 34 of the Code of Federal Regulations (2011), which very broadly defines "person-ally identifiable information."

On October 5, 2010, the court indicated to the parties that it believed that "there ha[d] not been a good faith compliance with the Discovery Act in the production of these documents." The matter was continued to October 7, 2010.

At the hearing on October 7, 2010, Anthony Platt, one of the two attorneys representing defendant U.S. Swimming at the hearing, explained that the complaints against coaches were organized, in the ordinary course of business, in files labeled with the coach's name and kept in chronological order and they were produced in that order. The only two exceptions to that order were (1) very recent complaints that were entered only on the computer and (2) member records that were maintained only on the computer. Platt offered to produce the documents for the court.

As to the extensive redactions, Platt asserted that the privacy issues were very sensitive and an accusation of sexual molestation could stigmatize someone for life. He indicated that many of the complainants were minors and disclosure of their identity could have a chilling effect on complaints about sexual misconduct. Platt argued that disallowing redaction of information that would allow someone to figure out the identity of the accused coach or complainant would defeat the purpose of the court's protective order. He contended that, if someone had the name of the swim club involved, "it would be easy to make a simple phone call or an Internet search and determine who the coach was at that time and, perhaps, determine who the members of the swim team were at that time . . . ." In addition, Platt explained that the swim club locations were redacted because "[i]n many of these instances there is only one swim club in a particular town" and if the location was provided, "it would be easy to determine who the individual was." He stated that LSC's are "basically subdivisions of United States Swimming" and identified defendant Pacific Swimming as an LSC and attempted to justify redaction of LSC's and persons holding positions in LSC's on the ground that "by looking at that information one can determine" the protected identities. Finally, Platt explained all names in an alphabetical listing of swim club members had to be redacted because otherwise the name of the member could be deduced from the surrounding alphabetically arranged names.

Platt reiterated that U.S. Swimming had used as a guideline the federal law governing disclosure of student records, which he claimed required redaction of "any information that alone or in combination is linked or linkable to a specific student." He asserted that they had made common sense judgments about redaction by asking whether the information would enable someone to identify the coach or the complainant. He declared that, "if the Court has any doubts in that regard, we are more than willing to submit any documents in

both redacted and un-redacted form . . . to the Court" or "if the Court is not inclined to be burdened with this discovery process any longer, we can submit it to Department 18." He asserted that there had been "a good-faith effort to comply with the Court's original order in letter and in spirit."

U.S. Swimming's second attorney, Jean Weil, indicated that accused coaches and complainants had a right to privacy of their names and identifying information. She argued: "[T]his is a bell that cannot be unrung. Once identifying information is presented to Plaintiff's counsel who can directly or indirectly find out the identities of either coach or complainant, the bell cannot be unrung, the damage cannot be undone. . . . The coaches don't know that complaints that were dismissed against them . . . could now be outed; complainants don't know that when they submitted a complaint that they could be outed and contacted by Plaintiff's attorney or other members of his legal team." Attorney Weil requested that the documents be reviewed in camera because they needed to protect their clients and their law firm.

Plaintiff's counsel accused opposing counsel of misrepresenting information under penalty of perjury and redacting everything, which was "almost like a slap in this Court's face." Attorney Platt reminded the court that it had instructed them to redact any identifying information and again asked the court to look at the documents. Attorney Weil suggested having Judge Monahan in the discovery department review the documents in camera.[4] The court replied: "I am not going to do that to Judge Monahan. He has on the average of somewhere between 20 to 30 discovery motions every Friday. And for him to start from scratch and review the same papers [that] I have been over in this matter, I don't think would be appropriate."

The court commented that perhaps "it would be useful if you want to pay the money for it to have a discovery referee or discovery master in this case." It stated that it did not appreciate personal attacks against lawyers and admonished against discovery gamesmanship. The matter was taken under submission.

On October 15, 2010, the court granted the motion to compel compliance with its August 6, 2010 order. The court ordered defendant U.S. Swimming to, within 20 days, "reproduce to plaintiff all documents previously produced" in response to that order segregated by complaint with any redaction "limited to the name, address, telephone number and other specific identifying number of the person making the complaint (and his or her parents) and the person (i.e. coach) subject to the complaint." Redaction could not include

---

[4] Apparently, Judge Kleinberg was not in the discovery department and he held the August 6, 2010 hearing and issued the August 6, 2010 rulings because Judge Monahan was on vacation at that time.

"any documents that have already been made public, or are, or were, in the public realm, including, but not limited to, any newspaper articles, Internet web-site pages, court files (that have not been sealed), and documents submitted to defendant's review board [that] were generated by said board." It found that U.S. Swimming's failure to comply with the August 6, 2010 order and its opposition to the motion to compel compliance were "without substantial justification." It ordered defendant U.S. Swimming to "pay monetary sanctions to plaintiff in the amount of $5,250.00."

## B. Dismissal Not Required but Scope of Appellate Review Is Limited

The notice of appeal states that appeal is taken "from the Order entered October 15, 2010 regarding the production of documents and payment of monetary sanctions in the amount of $5,250.00." We first consider plaintiff's motion for a partial dismissal of the appeal insofar as defendant U.S. Swimming purports to be appealing from the nonappealable provisions of the October 15, 2010 discovery order.[5]

"A trial court's order is appealable when it is made so by statute. [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [107 Cal.Rptr.2d 149, 23 P.3d 43].) Under section 904.1, an appeal may be taken from "an interlocutory judgment directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)" (§ 904.1, subd. (a)(11)) or from "an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)" (§ 904.1, subd. (a)(12)). There is no statutory provision for appeal from an order compelling compliance with a discovery order. While a party may seek extraordinary writ relief to prevent discovery of information protected by the right of privacy (see *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 659 [125 Cal.Rptr. 553, 542 P.2d 977]; cf. *Davis v. Superior Court* (1992) 7 Cal.App.4th 1008, 1012 [9 Cal.Rptr.2d 331] [privileged information]), this is not such a proceeding.

"An attempt to appeal from a nonappealable order does not give this court jurisdiction or authority to review it." (*Sherman v. Standard Mines Co.* (1913) 166 Cal. 524, 525 [137 P. 249].) Consequently, it is the duty of the court to dismiss an appeal from an order that is not appealable. (*Collins v. Corse* (1936) 8 Cal.2d 123, 124 [64 P.2d 137].) The court's October 15, 2010 order, however, is appealable insofar as it imposes a monetary sanction exceeding $5,000. (See § 904.1, subd. (a).) Consequently, this court is not required to

[5] This court has already dismissed the appeal of defendant Pacific Swimming, Inc. (Pacific Swimming). The monetary sanction was imposed on only U.S. Swimming.

dismiss the appeal and the motion to dismiss is denied. But issues unrelated to the propriety of the monetary sanction are not cognizable. This appeal is limited to review of that portion of the October 15, 2010 order imposing a monetary sanction of over $5,000.

Defendant U.S. Swimming nevertheless asserts that we may consider the correctness of the entire October 15, 2010 order because the propriety of the sanction order is inextricably intertwined with the other issues decided by the superior court, citing *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262 [26 Cal.Rptr.3d 831]. In that case, the lower court issued an order imposing terminating sanctions and a monetary sanction exceeding $5,000 against a plaintiff based on the plaintiff's repeated failure to provide discovery. (*Id.* at p. 264.) The appellate court recognized that "an order granting a request for terminating sanctions is not appealable and the losing party should ordinarily await entry of the order of dismissal to file notice of appeal" but denied a motion to dismiss the appeal because the order granting a monetary sanction of more than $5,000 was immediately appealable. (*Ibid.*) The appellate court explained that "although we attempted to limit our review to issues pertaining to the monetary sanctions awarded, our reasoning necessarily encompasses the propriety of granting terminating sanctions." (*Ibid.*) Plaintiff Mileikowsky "present[ed] no reason for overturning the order imposing monetary sanctions other than the invalidity of the order imposing terminating sanctions." (*Id.* at p. 280.) The court proceeded to determine that the court "did not abuse its discretion in ordering terminating sanctions." (*Ibid.*)

Here, the issue before us is whether the court abused its discretion in determining defendant U.S. Swimming acted without "substantial justification" and imposing a monetary sanction without conducting an in camera inspection. (See §§ 2023.030, subd. (a), 2025.480, subd. (g).) As will become clear from our discussion below, that question is not intertwined with the issue whether the October 15, 2010 order compelling compliance was proper in light of third party privacy rights.

Accordingly, we do not reach U.S. Swimming's contentions that the October 15, 2010 order "effectively vitiates his carefully-constructed protective order," "improperly impinges upon those coaches and complainants' rights of privacy," "will result in the dissemination of irrelevant information which will violate the privacy rights of numerous people," and failed to "provide for notice and an opportunity to be heard by individuals who may object to the disclosure."

## C. *Order Imposing a Monetary Sanction for Discovery Abuse*

### 1. *Applicable Law*

■ "Misuses of the discovery process include, but are not limited to," "[d]isobeying a court order to provide discovery" and "opposing, unsuccessfully and without *substantial justification*, a motion to compel . . . discovery." (§ 2023.010, subds. (g), (h), italics added.) The Civil Discovery Act (§ 2016.010 et seq.) provides in pertinent part: "To the extent authorized by the chapter governing any particular discovery method . . . , the court, after notice . . . and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) . . . If a monetary sanction is authorized by any provision of this title, the court *shall* impose that sanction *unless* it finds that the one subject to the sanction acted with *substantial justification* or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a), italics added.) Section 2025.480, subdivision (g), authorizes a monetary sanction if a deponent fails to obey an order compelling answers or production of documents and "the disobedient deponent is a party to the action or an officer, director, managing agent, or employee of a party . . . ."

In a variety of similar contexts, the phrase "substantial justification" has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact. (See *Nader Automotive Group, LLC v. New Motor Vehicle Bd.* (2009) 178 Cal.App.4th 1478, 1480, 1483 [101 Cal.Rptr.3d 152] [indicating phrase "substantial justification" as used in Veh. Code, § 3050.2, subd. (b), which specifies available sanctions upon a showing of failure to comply with discovery authorized by the New Motor Vehicle Board or its executive director " 'without substantial justification for that failure,' " means that "the entity's position in the proceedings was clearly reasonable, i.e., it had a reasonable basis in law and fact"]; *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189 [59 Cal.Rptr.2d 602] ["substantially justified" as used in Rev. & Tax. Code, § 19717, which precludes a cost award against the State of Cal. in tax litigation where state "establishes that its position in the proceeding was substantially justified" (*id.*, subd. (c)(2)(B)(i)), means justified to a degree that would satisfy a reasonable person or reasonably based in both law and fact]; see also *Pierce v. Underwood* (1988) 487 U.S. 552, 556 [101 L.Ed.2d 490, 108 S.Ct. 2541] [provision of Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412(d)(1)(A)) authorizes an award of attorney fees to party prevailing against the United States " 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust' "]; *Pierce*, at p. 565 [as used in EAJA's attorney fee provision, "substantially justified" means government's position was "justified to a degree that could satisfy a reasonable person" or, stated another way,

had a " 'reasonable basis both in law and fact' "].) We have no reason to believe that the Legislature intended a different meaning here.

■ The burden of proving "substantial justification" for failing to comply with a discovery order compelling answers or production of documents and opposing a motion to compel compliance is on the losing party claiming that it acted with "substantial justification." (See Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."]; see also Evid. Code, § 550 [party with burden of producing evidence]; *Kohan v. Cohan* (1991) 229 Cal.App.3d 967, 971 [280 Cal.Rptr. 474] [Code Civ. Proc., former § 2023 "allow[ed] one against whom sanctions are sought to show substantial justification to avoid the imposition of sanctions"].) Thus, the burden was on U.S. Swimming to prove it acted with "substantial justification."

"We review the trial court's ruling on a discovery sanction under the deferential abuse of discretion standard. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311].)" (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 108 [8 Cal.Rptr.3d 699].) "A court's decision to impose a particular sanction is 'subject to reversal only for manifest abuse exceeding the bounds of reason.' (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 [10 Cal.Rptr.2d 773].)" (*Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1183 [36 Cal.Rptr.3d 663].)

2. *Refusal to Hold In Camera Inspection Before Imposing Monetary Sanctions*

Defendant U.S. Swimming maintains that it fully complied with the August 6, 2010 order and, if the superior court had "performed an in camera review of the subject documents, it would have seen that those documents were produced as they [were] kept in the usual course of business, organized in file folders by complaint in chronological order" and the redactions were "of information from which the coaches and complainants could have been identified." It asserts that it acted with "substantial justification" in opposing the motion to compel compliance with the August 6, 2010 order and the court had no basis for imposing a monetary sanction.

Specifically, U.S. Swimming contends the superior court abused its discretion in "refusing to receive and review" the unredacted documents in camera, which "would have demonstrated . . . full compliance" with the August 6, 2010 protective order. The cases cited by defendant U.S. Swimming to support this argument have nothing to do with any right to an in camera review on a discovery motion. (See *Bole v. Bole* (1946) 76 Cal.App.2d 344,

346 [172 P.2d 936] [in divorce action, court erred in excluding "competent, relevant and material" evidence]; *Shippey v. Shippey* (1943) 58 Cal.App.2d 174 [136 P.2d 86] [in divorce proceedings, court erred in refusing to admit relevant testimony before ruling on motion concerning child visitation]; *Prather v. Hoberg* (1944) 24 Cal.2d 549 [150 P.2d 405] [in water rights case, court abused its discretion in refusing to receive evidence on a material issue].)

 Ordinarily, discovery motions are resolved by declaration. (Cal. Rules of Court, rule 3.1306(a) ["Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown."].) If the party seeking a monetary sanction meets its burden of proof, the burden shifts to the opposing party attempting to avoid a monetary sanction to show that it acted with "substantial justification." (See Evid. Code, §§ 110, 115, 500, 550; Code Civ. Proc., §§ 2023.030, subd. (a), 2025.480, subd. (g); cf. *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1227 [84 Cal.Rptr.3d 813] [burden of proof shifted to party opposing motion for a terminating sanction].) Thus, once plaintiff Doe presented a sufficient showing that U.S. Swimming had failed to comply with the August 6, 2010 order by overredacting, the burden shifted to U.S. Swimming to show that it had "substantial justification" for its actions, for example, showing that it had reasonably construed the protective order even if the court had something else in mind.

 A party asking for an in camera inspection of documents to protect privacy interests in discovery has the burden of showing good cause for such inspection. (See *Babcock v. Superior Court* (1994) 29 Cal.App.4th 721, 726–727 [35 Cal.Rptr.2d 462].) Similarly, we think that a party opposing a motion for sanctions has the burden of showing good cause when it asks for an in camera inspection of documents to prove it reasonably applied a protective order safeguarding privacy interests. An in camera inspection of numerous documents with multiple redactions is time consuming and burdensome[6] and there must be at least some minimal showing. In this particular case, the court did not abuse its discretion in refusing to hold an in camera inspection before imposing a monetary sanction.

In her declaration, Bielak stated that the documents had been "produced as they [were] kept in the usual course of business." But the declaration did not state that the documents were segregated by complaint or explain how plaintiff could determine, from the produced documents, the complaint to

---

[6] U.S. Swimming did not request the appointment of a discovery referee to perform an in camera inspection of the documents (see § 639, subds. (a)(5), (c)).

which each document related. The declaration failed to show that the documents had been produced in any comprehensible order.

Most importantly, Bielak's declaration indicated that U.S. Swimming's general interpretation of the August 6, 2010 protective order was unreasonable. To begin with, the interpretation of the term "complainants" was excessively broad. U.S. Swimming's motion for a protective order was principally directed at protecting accused coaches who had not yet received due process within the organization and against whom allegations of sexual misconduct had not yet been proven. In its initial memorandum, U.S. Swimming also mentioned the privacy interests of individuals making allegations of sexual misconduct against coaches and indicated that they were mostly minors. It asked for an order protecting the privacy rights of accused coaches and complainants. In its subsequent reply memorandum, U.S. Swimming cited a child molestation case involving judicial review of sealing orders to protect the privacy of minors. U.S. Swimming pointed out that, in the cited case, "[s]ome statements in the [search warrant] affidavit were made by a minor and his family concerning events of a sexual nature." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1015 [27 Cal.Rptr.3d 596].) U.S. Swimming then argued as to the present case, "these complainants and their family members have strong privacy interests" with respect to allegations of sexual misconduct by coaches.

In the context of its moving papers, U.S. Swimming could not reasonably construe the word "complainant" as used in the protective order to include whistleblowers who reported alleged coach misconduct and who were not alleged victims or family members. Nevertheless, Attorney Bielak stated in her declaration that she construed "complainant" to include "people who brought claims forward on behalf of victims." In addition, she disclosed that she interpreted the word "complainant" to include "people who provided evidence in support of claims." U.S. Swimming certainly had no authority to unilaterally expand the meaning of "complainant" to include persons merely providing evidence, in other words a "witness." (See American Heritage College Dict. (3d ed. 1997) p. 1550 [defining "witness"]; Black's Law Dict. (9th ed. 2009) p. 1740 [same].) Her interpretation of the word "complainant" was contrary to the usual and ordinary dictionary meaning. (See American Heritage College Dict., *supra*, p. 284 ["complainant" is a "party that makes a complaint or files a formal charge; a plaintiff"]; Black's Law Dict., *supra*, p. 323 [similar].) Further, by no stretch of language does the word "complainant" cover persons merely employed by or holding some position within U.S. Swimming or an affiliated swim organization. If U.S. Swimming wished to protect the privacy interests of persons other than accused coaches and complainants, it should have sought a broader protective order.

It further appears that U.S. Swimming unreasonably pushed the envelope by expansively interpreting the phrase "any identifying information." Although U.S. Swimming could reasonably conclude that all facts that identified the accused coaches and complainants could be redacted, it did not establish that it had acted within those parameters.

Attorney Bielak's declaration and counsel's arguments at the motion hearing indicated that Bielak and her staff liberally redacted all indirect information that potentially "could be used to identify" the individuals within the protected group as she overbroadly defined it. As indicated by Bielak's declaration, the redactions included information regarding locations, member identification numbers, swim clubs, LSC's, e-mail addresses of reporting parties, and "email addresses of people to whom the complaint was reported (other than people whose responsibility it is to field such complaints)." But her declaration failed to provide any explanation of how such information would readily identify any accused coach or complainant. At the motion hearing, counsel merely argued generally that the redactions were necessary because otherwise the identity of accused coaches or complainants could be discovered by making a telephone call or conducting an Internet search or by cross-referencing to other information. U.S. Swimming's attorneys tried to justify their interpretation of "identifying information" by pointing to the regulatory language implementing FERPA.

FERPA is not analogous to protective nondisclosure in discovery.[7] It was not reasonable for U.S. Swimming to rely on the very comprehensive

---

[7] The provisions of FERPA "prohibit the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons" but "create no personal rights to enforce under 42 U. S. C. § 1983." (*Gonzaga Univ. v. Doe* (2002) 536 U.S. 273, 276 [153 L.Ed.2d 309, 122 S.Ct. 2268].) FERPA generally provides financial sanctions for violation of its nondisclosure provisions as follows: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein *other than directory information*, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents . . ." (20 U.S.C. § 1232g(b)(1), italics added) or of the student if the student is at least 18 years old or attending an institution of postsecondary education (20 U.S.C. § 1232g(d)). The term "directory information" is statutorily defined as including "the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student." (20 U.S.C. § 1232g(a)(5)(A); see 34 C.F.R. § 99.3 (2011) [regulatory definition].) The term "personally identifiable information" is defined by regulation as including but not limited to: "(a) The student's name; [¶] (b) The name of the student's parent or other family members; [¶] (c) The address of the student or student's family; [¶] (d) A personal identifier, such as the student's social security number, student number, or biometric record; [¶] (e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; [¶] (f) Other *information that, alone or in combination, is linked or linkable* to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge

regulatory definition of "personally identifiable information," which had no bearing on the intended meaning of the phrase "any identifying information" as used in the protective order.

Counsel had argued at the hearing that "[i]n many of these instances there [was] only one swim club in a particular town." It would be understandable if U.S. Swimming had redacted the name of a particular swim club if that swim club had only one coach or similarly pointed information from which the identity of an accused coach could be straightforwardly derived. But U.S. Swimming appears to have indiscriminately redacted geographic location, the names and locations of swim clubs, the names and locations of LSC's (which presumably encompass regional geographic areas, multiple swim clubs, and numerous coaches and swimmers),[8] and the names of and contact information for many persons other than accused coaches or complainants without sufficient explanation of how that information would identify any accused coach or complainant. U.S. Swimming failed to establish through Bielak's declaration that its interpretation of the protective order was reasonably based in law and fact.

If U.S. Swimming was concerned that the redacted information, together with other information that was obtainable outside discovery, would allow someone to deduce the identity of an accused coach or complainant, it should have sought a broader protective order or a protective order limiting the use and dissemination of the disclosed information rather than adopting a strained and overinclusive interpretation of "identifying information." (See § 2025.420; *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 371 [53 Cal.Rptr.3d 513, 150 P.3d 198]; see also *Babcock v. Superior Court, supra,* 29 Cal.App.4th at p. 728.)

 Based on its own declaration and its reliance upon a patently inapt federal regulation, the superior court could reasonably conclude that U.S. Swimming had made excessive redactions without "substantial justification." The record does not establish that, under the circumstances of this case, the court abused its discretion in refusing to hold an in camera document inspection for the purpose of deciding whether a monetary sanction was appropriate or in imposing a monetary sanction without conducting an in camera inspection.

---

of the relevant circumstances, to identify the student with reasonable certainty; or [¶] (g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." (34 C.F.R. § 99.3 (2011), italics added.) Thus, it appears that under FERPA a student's name, address, and telephone number may be released since the information is directory information.

[8] In a declaration in support of the motion for a protective order, the executive director of U.S. Swimming stated that Pacific Swimming was an LSC "with a territory located principally along the northwest coast of California, including San Jose." At the October 7, 2010 motion hearing, it was explained that LSC's were "basically subdivisions of United States Swimming."

## DISPOSITION

The October 15, 2010 order imposing a monetary sanction is affirmed.

Rushing, P. J., and Premo, J., concurred.