Filed 8/29/24  Delis v. Thorn CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO DELIS et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>JEFFREY D. THORN et al.,<br><br>    Defendants and Respondents. | F086944<br><br>(Super. Ct. No. BCV-21-102152)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Rushing McCarl, Ryan McCarl, John Rushing and Davit Avagyan, for Plaintiffs and Appellants.

Lynch and Lynch, Craig M. Lynch; Heller & Edwards, Lawrence E. Heller, for Defendants and Respondents.

-ooOoo-

Plaintiff and appellant Mario Delis filed a motion to compel discovery against a third-party deponent, Sandra Henson, who is an employee of defendant and respondent Jeffrey Thorn and represented by Thorn's attorneys. The trial court denied Delis's motion to compel and imposed sanctions in the amount of $6,950.00 on Delis and his counsel. Delis appeals the trial court's sanctions order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mario Delis and Jeffrey Thorn, along with Chuck Shakta, were partners in a cannabis business (420 Kingdom) in Kern County. The business was started in 2018. A partnership dispute subsequently ensued and Delis sued Thorn, thereby initiating the instant matter. The matter is presently in a pretrial posture.

In March 2023, Delis served a third amended oral deposition notice on Sandra Henson, with 11 requests for production of documents at deposition. The third amended notice of deposition was dated March 2, 2023. Henson's deposition was scheduled for March 21, 2023. Henson timely served on March 15, 2023, responses and objections to the requests for production of documents at deposition (under Code Civ. Proc., § 2025.410, subd. (a), a deponent may timely serve objections until three days prior to the deposition and any objection not made by that time is waived). Henson objected to each of the 11 requests for production of documents at deposition; she also stated, as to each request, that she did not have any responsive documents or things in her possession, custody, or control.

Henson's deposition took place as scheduled on March 21, 2023. John Rushing, counsel for Delis, took the deposition. Henson testified at deposition that she was hired by Thorn in 2019 to do bookkeeping for several businesses owned by Thorn. During the deposition, Rushing asked Henson: "When you got the notice of deposition, did you do any searching to find responsive documents to that notice of deposition?" Henson

2.

answered: "I was given a list of documents to provide, and I did provide those."

Rushing and Henson also had the following exchange:

"Q. When you got the deposition notice that asked for documents, did you at that time do any searches for documents?

"A. Yes. I gave every document that I had available.

"Q. When did you give every document that you had available?

"A. It's been a very long process, and I do not know specific dates.

"Q. Well, see, this is what I'm getting, ma'am. We noticed your deposition earlier this year, right. And so I want to know what you've done – [¶] … [¶] I'd like to know what you've done, let's say in the last month, to find documents related to the notice of deposition.

"Have you searched for anything in the last month?

"A. In the last month, no.

"Q. Okay. Have you searched for anything since January in response to the [prior] notice of deposition?

"A. It's been ongoing, so yes. My schedule has been very full, and yes, I've been providing documents on an ongoing basis."

Henson also described, in other exchanges with Rushing, searching for documents responsive to Delis's requests for production of documents at deposition. For example, Rushing asked Henson: "So between January and middle of February, did you, in response to the notice of deposition, search for any documents?" Henson responded: "I'm sorry. I don't remember specific dates, but I know that I have ongoingly looked for documents for this case." Rushing further asked Henson: "Have you – have you done a search of your Work Logic email for emails in any way related to the Cannabis operation?" Henson replied: "Yes, I did." Rushing next asked Henson: "Okay. And have you done a search of your 420 Kingdom email for emails in any way related to the Cannabis operation." Henson answered: "Yes, I did."

3.

On March 22, 2023, the day after Henson's deposition, Thorn was deposed by Delis's counsel, John Rushing. On March 23, 2023, Delis's counsel sent a letter entitled, "Further meet-and-confer re: motion to compel," to counsel for Thorn/Henson. The letter stated: "This letter will serve as a further attempt to meet and confer before filing one or more motions to compel relating to this week's depositions of Jeffrey Thorn and Sandra Henson." The letter also stated: "[Opposing counsel's] instruction not to answer a deposition question on the grounds of 'asked and answered' had no legal basis." The letter further stated: "Both witnesses failed to search for or produce a single document in response to deposition notices. Mr. Thorn testified that he believes he does not have to produce any more documents to Mr. Delis and that his attorneys allow him to unilaterally make determinations as to relevance and privilege." The letter concluded: "These actions, especially your team's disregard of our right to obtain relevant documents from the deponents, have put us in the position of having to file motions that would not be necessary if Mr. Thorn's counsel were controlling rather than enabling their client's litigation misconduct."

Among other responses, counsel for Thorn/Henson responded by email to Delis's counsel on June 8, 2023, stating, in part: "First of all, you are mistaken. As I previously stated, nowhere in Mr. Thorn's deposition that I could find was he even questioned concerning the Notice of Deposition. If you have such testimony kindly identify it for me. When Ms. Henson was questioned about her search for documents responsive to the Notice of Deposition she testified that she did not remember when she had made such a search but did testify that she had 'ongoing looked for documents in this case.' " Thorn's counsel also stated in his email: "Moreover, Mr. Thorn has produced hundreds of thousands of pages of documents in response to previous document requests. The Deposition Notices requested the production of documents that had been requested through prior, substantially identical, requests to produce, to which Thorn had produced

responsive documents." Counsel for Thorn/Henson continued in his email: "The purpose of meeting and conferring is so that the court is not burdened with unnecessary discovery motions that could, indeed should, have been resolved prior to court intervention. It is impossible for us to determine what documents you claim have been withheld unless you identify them. Likewise, you must identify specific deposition questions which you believe were not answered without justification." Counsel for Thorn/Henson added in his email: "For the life of me I don't understand why you do not simply identify those document requests and deposition questions. It is no more or less than you would have to do in any motion to compel and accompanying separate statement."

Delis's counsel responded to Thorn and Henson's counsel's email via letter dated July 5, 2023. Delis's counsel's letter stated: "Our letters and emails have repeatedly made clear that since neither Mr. Thorn nor Ms. Henson bothered producing any documents in response to the deposition notices, we would move to compel on every document request those notices contained." Delis's counsel further complained in the letter that Thorn and Henson's counsel's "frivolous objections such as 'Asked and Answered' " are "impermissible in a deposition and certainly do not furnish grounds to refuse to answer a question." Delis's counsel added: "Your insistence that you do not understand what we mean when we say we intend to move to compel on all the document requests in the deposition notices and on [your co-counsel's] frivolous instructions not to answer appears to be intended to distract the Court from Mr. Thorn's refusal to follow discovery rules." Delis's counsel concluded: "[W]e intend to file motions to compel relating to the Thorn and Henson depositions by the statutory deadlines of July 7 and 10."

Thereafter, on July 7, 2023, Delis filed a "Motion to Compel Further Responses and Documents Sought at Deposition of Sandra Henson," along with a memorandum of points and authorities. On July 19, 2023, Henson filed "Third Party Deponent Sandra

5.

Henson's Opposition to Plaintiff's Motion to Compel Further Responses and Documents at Deposition," along with declarations from Henson, Thorn, and Thorn's counsel and a request for sanctions in the amount of $6,950.00 against Delis and his counsel. Henson's opposition clarified: "Delis originally noticed Sandra Henson's ("Henson") deposition on August 9, 2022. Delis thereafter served a First Amended Notice of Sandra Henson's Deposition on August 11, 2022. Delis then served a Second Amended Notice of Henson's Deposition on November 23, 2022, and finally Delis served a Third Amended Notice of her deposition on March 2, 2023. <u>All of the deposition notices contained different Requests for the Production of Documents</u>."

As noted, Thorn submitted a declaration in support of Henson's opposition. Thorn declared: "I have produced 70,636 separate documents in this litigation, consisting of hundreds of thousands of pages of documents. Pursuant to this Court's Order of October 14, 2022, I spent some $15,000.00 on an outside vendor in order to bate-stamp, and at the same time further organize, the documents which Defendants have produced. I spent another $6,000.00 to hire an IT expert to help organize the documents and get them ready for bate-stamping. Among the things previously produced was the stamp of Mr. Delis' signature, which I turned over to Delis months ago." Thorn added: "I reviewed all **four** of the Requests for Production of Documents [at Deposition] which have been served on my bookkeeper, Sandra Henson, including the last one which I have been informed is the subject of a Motion that has been filed against Ms. Henson. To the extent we could understand and get our heads around those Requests, both Ms. Henson and I searched for any documents which might be responsive to those Requests and I determined that I had produced all documents responsive to all these Requests that were in the Defendants['] possession, custody and control."

Thorn also stated in his declaration: "I literally cannot quantify the time that my COO, Kelly Steinback, Ms. Henson and I have spent searching for and locating

6.

documents in order to respond to the hundred-plus Requests to Produce which have been propounded by Delis.  Other than to say it has been hundreds of man-hours.  This has, needless to say, negatively affected our ability to run this business."  In addition, Thorn noted:  "Sandra Henson is my bookkeeper.  She has no managerial responsibilities and no financial interest in any of the Defendants or any other business that I own or have ever owned.  She has assisted me in locating not only the documents which she has been requested to produce, but also documents responsive to the myriad Requests I have received so far.  Although [Delis] was rarely in the office … he is very much aware of the limited role Ms. Henson plays as a bookkeeper."

**TRIAL COURT'S RULING**

The trial court held a hearing on Delis's motion to compel on August 3, 2023.  At the beginning of the hearing, the trial court stated:  "My tentative is to deny the motion and grant defendant the requested sanctions of $6,950 against plaintiff and [plaintiff's] counsel.  I'll give you a detailed explanation for that tentative."  The trial court then went through each of the 11 requests for production of documents at deposition that were served on Henson and were at issue in Delis's motion to compel; the court ruled separately on each of the requests.  The trial court denied all of Delis's requests for production of documents at deposition served on Henson and at issue in the motion to compel.  The court's rationale for denying the motion as to all the requests was, for the most part, that Henson had responded she did not have any responsive documents in her possession, custody, or control and/or that the requests were overbroad or unduly burdensome.

As an example of the court's methodical approach, we will reproduce here, the court's discussion with respect to requests Nos. 10 and 11 encompassed in Delis's motion to compel.  The trial court stated:

7.

"Number 10 requests all text messages with any of the following persons from 2018 to the present: Sandra Henson, Chuck Shakta, Mario Delis, Kelly Steinback, Jeff Newman, Alex Campos, Doug Lowery, and/or Brian Patrick, including all message threads that include one or more of these persons' phone numbers.

"The objection is made that that is overbroad and that it is compound, but without waiving any of the objections, responding party responds she does not have any responsive documents in her possession, custody, or control.

"I would deny the motion. Although it's not a legal objection, I would find that request to be ridiculous. Read as written it would require Henson to produce every text on her phone from 2018. That makes no sense at all. It's grossly overbroad. The plaintiff fails to point out how Henson would have access to other people's text messages, and the request as written would require production of texts that have absolutely no relationship whatsoever to the issues in this case; so I would deny with respect to Number 10.

"Number 11 seeks all communications sent or received from June 1st, 2020, to present that meet the following requirements which are set forth in sub A and sub B.[1]

"The response is made that the request is overbroad and that it seeks all documents sent, created, and received without limiting the request. "Without waiving any of the objections, responding party responds that she does not have any responsive documents in her possession, custody, or control.

---

**1** The request for production of documents No. 11, encompassed in Delis's motion to compel, asked for: "All communications sent or received from June 1, 2020 … to present that meet the following requirements:

(A) The communication relates to 420 Kingdom or any company using that name, Worklogic IP or any company using the name 'Worklogic,' WLIP (a.k.a. 'the branding entity'), or any party to the Delis v. Thorn matter; and

(B) Any of the following persons or entities is a sender or recipient of the communication: Blaze Solutions, Inc., the City of Arvin, the County of Kern, the California Department of Cannabis Control (or its predecessor the California Bureau of Cannabis Control), the California Secretary of State, the Franchise Tax Board, or the Internal Revenue Service."

8.

"I would deny as to that request, number one, on the basis that she does not have documents in her possession, custody, or control. And I don't find that surprising. She's the bookkeeper. I don't know why we would necessarily expect that she would have such documents."

After addressing each of the 11 requests for production of documents at deposition implicated in Delis's motion to compel, the court made additional comments:

"With respect to the request for sanctions, CCP Section 2025.450(g) requires that if the motion to compel is granted, the moving party shall be awarded sanctions, unless doing so would be unjust. While there is no discussion about sanctions when the opposing party totally prevails, the rationale would be the same.

"Even if plaintiff had prevailed on the motion, I would probably deny plaintiff's request for sanctions because CCP Section 2023.040 requires the requested amount for sanctions to be set forth in a declaration. Plaintiff cites to [his] counsel's declaration, paragraphs 30 to 33, regarding the amount of the sanctions; counsel's declaration does not contain that many paragraphs. There is nothing in counsel's declaration attesting to how much time he spent preparing the motion, nor what his hourly rate is.

"On the other hand, Henson's counsel filed a declaration setting forth the time he put in and his hourly rate supporting the request for sanctions [and the total] is $6950, requesting that those sanctions be imposed on plaintiff and counsel.

"As an aside, it appears to the court in examining what's before me that these attorneys do not work well together. I would certainly encourage both counsel to make a little more effort to be as civil and cooperative. But in this instance the – first of all, the motion should not have been brought against Henson. If anything it should have been brought against Thorn, although I don't know what documents Thorn has access to. But for those reasons I would impose the sanctions; so that's the basis for my tentative."

The court then heard oral argument from Delis's counsel. Delis's counsel argued, in part: "I think that [the document requests encompassed in the motion to compel] are perfectly justified requests and I think the responses contain boilerplate objections which are a sanctionable misuse of discovery. And so I understand if the court ultimately concludes that no – that these requests, you know, should be directed at somebody else or

9.

that the requests are too – ask for too many documents, but they should have to answer without – without the objections that lack merit.  The fact that – as soon as a third party resisting discovery copies and pastes the same objections to every response and doesn't budge on those, that justifies and requires a motion to compel which is a use – a use that shouldn't have to be made of the court's time and our time but it was required to be made not by us but by them by making and standing on boilerplate objections."

The court responded:

> "There is no prohibition on using cut-and-pasted objections as long as those objections are meritorious.  In this case I found the objections and I do find the objections to be meritorious.  You have argued several times that these are nonmeritorious objections, but I do find them meritorious and they are obviously meritorious just by looking at the content of the requests together with the subject matter of the objection, so I don't find that any further explanation or argument is required.

> "You argue that responding party did not make any effort to narrow the request or redraft the request, but it's not their burden to cure defects; it's your burden to serve properly drafted requests."

Counsel for Henson/Thorn "submit[ted] to the tentative," and did not present argument.  Delis's counsel then again addressed the court:  "Your Honor … I think that the motion was made with substantial justification, there can't be any doubt about it.  I understand the court has found that there are one or more meritorious objections in each one, but that doesn't address the fact that there are some that are clearly not meritorious."  The court responded:  "But you're the person that took up counsel's and the court's time by filing this motion and there were meritorious objections to each and every one of these [requests].  [¶]  I'll deny the motion and grant defendant sanctions of $6,950 against plaintiff and plaintiff's counsel to be payable [within 60 days]."

The trial court memorialized its ruling in a minute order issued after the hearing.  The minute order tracked the court's verbal rulings at the hearing on Delis's motion to compel.  The minute order included a concluding paragraph as follows:  "In this case, the

10.

Court found there was merit to one or more of the objections raised in response to each request. Those meritorious objections (which should have been obvious on their face) and responses under oath that responding party had no responsive documents made the filing of the motion to compel frivolous. The fact that the meritorious objections may have been accompanied by a non-meritorious objection does not change the fact that the filing of the motion to compel was frivolous."

## DISCUSSION

### I.        Trial Court's Sanctions Order

#### A.        *The Trial Court Had the Authority to Impose the Sanctions Order*

Based on the trial court's reference to Code of Civil Procedure section 2025.450, subdivision (g)(1),[2] Delis argues, among other things, that "the trial court's sanctions award lacked any statutory basis." Delis further contends that his argument that the trial court's sanctions award had no statutory basis concerns an error of law, triggering de novo review. Upon independent review of the question of the statutory basis, or lack thereof, of the trial court's sanctions award, we conclude the sanctions award is grounded in statutory authority. Accordingly, we reject Delis's arguments with respect to section 2025.450(g)(1).

Section 2025.450 is part of the Civil Discovery Act (§§ 2016.010 to 2036.050), Chapter 9 (Oral Deposition Inside California, §§ 2025 to 2025.620), Article 4 (Objections, Sanctions, Protective Orders, Motions to Compel, and Suspension of Depositions, §§ 2025.410 to 2025.480). Section 2025.450 provides: "If, after service of a deposition notice, a party to the action or … employee of a party … without having served a valid objection … fails to appear for examination, or to proceed with it, or to produce for inspection any document, electronically stored information, or tangible thing

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

11.

described in the deposition notice, the party giving the notice may move for an order compelling the deponent's attendance and testimony, and the production for inspection of any document, electronically stored information, or tangible thing described in the deposition notice." (§ 2025.450, subd. (a).) Further, section 2025.450, subdivision (g)(1) provides: "If a motion under subdivision (a) is granted, the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) in favor of the party who noticed the deposition and against the deponent or the party with whom the deponent is affiliated, unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2025.450, subd. (g)(1).)

Delis argues that the trial court's sanctions award was based on section 2025.450, subdivision (g)(1), but this section is inapposite because it *only* provides for sanctions in favor of the party who noticed the deposition at issue. Delis points out that section 2025.450, subdivision (g)(1) is not a reciprocal sanctions provision.

Henson, in her responsive brief, notes: "Code of Civil Procedure § 2025.450 applies only where the deponent fails to timely file objections to a deposition notice yet fails to appear or produce documents at the deposition. § 2025.450(a). In this case it is undisputed that Respondent Henson timely filed the Responses which contained objections to the Requests [and] which stated that she did not have the responsive documents in her possession, custody or control." Henson further contends, that while the trial court observationally referenced section 2025.450, subdivision (g), it first fully explained its reasoning in denying *Delis's request* for sanctions, and next clarified that it would instead grant *Henson's request* for sanctions because Delis's motion to compel was "frivolous." Henson adds: "The sanctions awarded by the trial court were supported by its statutory authority under [sections] 2025.480(j) and 2031.310(h)." Henson

12.

concludes the trial court's sanctions award was therefore entirely grounded in statutory authority. As discussed below, we agree.

Section 2025.480, which is part of Chapter 9 (Oral Deposition Inside California, §§ 2025 to 2025.620) of the Civil Discovery Act, provides: "If a deponent fails to answer any question or to produce any document, electronically stored information, or tangible thing under the deponent's control that is specified in the deposition notice or a deposition subpoena, the party seeking discovery may move the court for an order compelling that answer or production." (§ 2025.480, subd. (a).) Further, section 2025.480, subdivision (j) provides: "The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully *makes or opposes* a motion to compel an answer or production, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.)

As for section 2031.310, which is part of Chapter 14 (Inspection, Copying, Testing, Sampling, and Production of Documents, Electronically Stored Information, Tangible Things, Land, and Other Property, §§ 2031 to 2031.510), it provides: "On receipt of response to a demand for inspection, copying, testing, or sampling, the demanding party may move for an order compelling further response to the demand if the demanding party deems that any of the following apply: [¶] (1) A statement of compliance with the demand is incomplete. [¶] (2) A representation of inability to comply is inadequate, incomplete, or evasive. [¶] (3) An objection in the response is without merit or too general." (§ 2031.310, subd. (a).) Further, section 2031.310, subdivision (h) provides: "[T]he court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully *makes or opposes* a motion to compel further response to a demand,

13.

unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.)

In addition, section 2023.030, which is in Chapter 7 (Sanctions, §§ 2023 to 2023.050) of the Civil Discovery Act, provides: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that assertion, or on both. If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).)

Finally, section 2023.010, which is also in Chapter 7 (Sanctions, §§ 2023 to 2023.050) of the Civil Discovery Act, provides: "Misuses of the discovery process include, but are not limited to, the following: [¶] (h) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or limit discovery." (§ 2023.010, subd. (h).)[3]

---

[3] Our Supreme Court recently addressed in *City of Los Angeles v. PricewaterhouseCoopers, LLP* (Aug. 22, 2024, S277211) __ Cal.App.5th __ (*PwC*) the framework for imposing sanctions encompassed by the Civil Discovery Act. The Supreme Court explained: "The Civil Discovery Act sets out six methods by which litigants can obtain pretrial disclosure of relevant information: (a) depositions; (b) interrogatories; (c) inspections of documents, things, and places; (d) physical and mental examinations; (e) requests for admissions; and (f) exchanges of expert trial witness

14.

Here, Delis's motion to compel was made under, inter alia, sections 2025.450, 2025.480, and 2031.310 of the Civil Discovery Act. As discussed above, sections 2025.480 and 2031.310 clearly authorize the sanctions imposed by the trial court. Furthermore, Henson's opposition to the motion to compel cited *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434, in support of her argument that Delis's motion to compel lacked substantial justification and was frivolous, and therefore constituted a misuse of the discovery process and triggered sanctions against Delis and

information. (Code Civ. Proc., § 2019.010.) The procedures relevant to discovery under each of these six methods are outlined in different chapters of the Act. For example, Chapters 9 through 11 govern oral and written depositions (Code Civ. Proc., §§ 2025.010-2028.080), while Chapter 13 governs interrogatories (*id.*, §§ 2030.010-2030.410)." (*PwC*, *supra*, __ Cal.App.5th __ [pp. 23-24].)

*PwC* further explained: "Each of the provisions that authorizes a court to impose sanctions states that such sanctions may (or shall) be imposed 'under Chapter 7 (commencing with Section 2023.010).' " (*PwC*, *supra*, __ Cal.App.5th __ [p. 25].) Chapter 7 contains both sections 2023.010 and 2023.030, which together are "the general sanctions provisions of the Civil Discovery Act." (*PwC*, *supra*, __ Cal.App.5th __ [pp. 2, 21].) .) The *PwC* court noted: "The primary question before us is whether … sections 2023.010 and 2023.030 … confer any *independent authority* [that is, authority that is independent of the method-specific chapters] to impose sanctions[, including monetary sanctions,] for discovery abuses." (*PwC*, *supra*, __ Cal.App.5th __ [p. 30, italics added].) *PwC* answered that question in the affirmative. *PwC* first clarified: "The method-specific chapters were deliberately designed to cover the most commonly recurring forms of discovery misuse. Whether a court is to look for statutory authority in those chapters, or to section 2023.030, or both, the outcome is the same: The court may impose those sanctions that are authorized by the more specific provision in the chapter governing the relevant discovery method." (*PwC*, *supra*, __ Cal.App.5th __ [pp. 44-45].) Next, *PwC* went further and held that sections 2023.010 and 2023.030 not only authorize a trial court to impose sanctions, including monetary sanctions, for specific types of discovery misconduct expressly contemplated by the method-specific chapters of the Civil Discovery Act, but also for any "unusual form of discovery abuse, or a pattern of abuse, not already addressed by a relevant sanctions provision." (*PwC*, *supra*, __ Cal.App.5th __ [p. 51].) As discussed below, the discovery misconduct at issue here, i.e., the filing of a frivolous motion to compel, is adequately covered by the method-specific chapters of the Civil Discovery Act.

his counsel. *Doe v. United States Swimming, Inc*. clarifies that under section 2023.010, misuses of the discovery process, including in relation to a motion to compel, are subject to monetary sanctions.

The trial court here specifically determined that Delis's motion to compel was frivolous, which in turn indicates that the court found that Delis's motion was *not* substantially justified and constituted a misuse of the discovery process. The trial court's award of sanctions encompassed the fees and costs incurred by Henson in opposing what the court found was a frivolous motion to compel. The court's sanctions award was fully authorized by the statutes implicated in the parties' moving and opposition papers. We conclude the trial court properly exercised its statutory authority, even if it did not *explicitly* address all aspects of the applicable statutory regime.

### B. The Trial Court's Sanctions Award Does Not Constitute an Abuse of Discretion

" 'We review the trial court's ruling on a discovery sanction under the deferential abuse of discretion standard. [Citations.] "A court's decision to impose a particular sanction is 'subject to reversal only for manifest abuse exceeding the bounds of reason.' " ' "(*Doe v. United States Swimming, Inc*., *supra*, 200 Cal.App.4th at p. 1435.)

Here, the trial court evaluated each document request at issue in Delis's motion to compel and further evaluated Henson's response to each request. The court's rationale for denying the motion as to all the requests was, for the most part, that Henson (Thorn's bookkeeper) had responded she did not have any responsive documents in her possession, custody, or control and/or that the requests were overbroad or unduly burdensome. The trial court concluded that the motion to compel was frivolous and granted Henson's request for sanctions against Delis and his counsel. We detect no abuse of discretion in the trial court's sanctions award.

16.

Delis complains the trial court should have granted his motion to compel because "Henson did not produce a single document in response to the subpoena, and she testified that she hadn't searched for documents in response to the requests in the deposition notice." Delis mischaracterizes Henson's deposition testimony; Henson made clear in her deposition that she had searched on an ongoing basis for the documents requested in the multiple deposition notices served on her by Delis. Moreover, the record showed that Thorn, along with his employees, had provided voluminous documents to Delis in discovery.

Delis next complains that the trial court erred here because it "rewarded the practice of copying and pasting boilerplate objections by sanctioning the party who challenged them." First, Delis's insistence that Henson's objections were "boilerplate" appear to be exaggerated. Second, the trial court, in its ruling, adequately addressed Delis's complaints in this regard.

Finally, Delis challenges the trial court's suggestion that sanctions were appropriate, in part, because Delis's motion to compel "should have been brought against Defendant Thorn, not Sandra Henson." However, the court was merely commenting on the fact that the wide-ranging requests for documents and things included with Henson's deposition notice were misdirected to the extent they were directed at a bookkeeper rather than at Thorn, who was party to the partnership dispute at the heart of this matter.

## II. Henson's Request for Attorneys' Fees

Henson concludes her responsive brief as follows:

"This Appellate Court should affirm the sanctions order issued by the trial court and deem this appeal, over less than $7,000, to be frivolous, just like Appellant's Motion to Compel was.

"Based thereon, it is respectfully submitted that third party Respondent Henson be awarded the costs and fees she has expended in opposing this appeal (the amount and substantiation of those fees will be submitted by Henson if and when appropriate)."

17.

Since Henson does not cite applicable authorities under which this court could properly award to her the fees she has incurred in opposing the instant appeal, her request for such fees is denied.

## **DISPOSITION**

The trial court's order imposing sanctions in the amount of $6,950.00 on Delis and his counsel is affirmed. Henson is entitled to costs only (see above) on appeal.


SMITH, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.