Filed 4/29/14  Stahl Law Firm v. Apex Medical Technologies CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| STAHL LAW FIRM et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> APEX MEDICAL TECHNOLOGIES, INC., et al., <br><br> Defendants, Cross-complainants and Respondents. | D063411 <br><br><br> (Super. Ct. No. 37-2010-00097839-CU-PO-CTL) |

APPEAL from orders of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed in part and dismissed in part.

Norbert Stahl, in pro. per., for Plaintiffs, Cross-defendants and Appellants.

Arthur A. Wellman, Jr. for Defendants, Cross-complainants and Respondents.

The Stahl Law Firm and Norbert Stahl (together the Stahl Plaintiffs) appeal from orders (1) granting in part a motion to compel further deposition testimony from Stahl and (2) granting sanctions against them.  As discussed below, we dismiss the appeal from the order granting the motion to compel and affirm the sanction order.

FACTUAL AND PROCEDURAL BACKGROUND

The Stahl Plaintiffs represented Apex Medical Technologies, Inc., Zone Medical, LLC and Mark McGlothlin (collectively Defendants) in an underlying action. They filed this action to recover unpaid fees. Defendants filed a cross-complaint for professional negligence and breach of fiduciary duty. As the parties are aware, this action has been fraught with discovery disputes. Our summary, however, will be limited to those background facts necessary to resolve the limited issue on appeal.

In late April 2012, Stahl appeared for his deposition and produced documents on a hard drive that Defendants needed to copy. The hard drive contained 461,083 files and copying the documents took over two hours. While the files were copying, they could not be viewed. When asked for the date he copied the documents onto the hard drive, Stahl asserted the attorney work product privilege. In a nutshell, Stahl did not know what documents he produced or how to find them.

On July 20, 2012, the trial court partially granted Defendants' motion to compel discovery (the July Order). Therein, the court ordered the Stahl Plaintiffs to produce certain documents within 20 days after service of the order. The court noted that "[D]efendants were entitled to go through each document request at Stahl's deposition and ask him questions" designed to elicit testimony as to whether he had produced all responsive documents. If Stahl refused to answer, the court further noted that this would "be an appropriate subject for a motion to compel." After Stahl failed to answer questions regarding the documents produced, Defendants filed a motion to compel

2

responses and production at a continued deposition. This motion is the subject of this appeal.

In a tentative ruling dated January 17, 2013, the court granted the motion in part. (All further date references are to 2013 unless otherwise indicated.) After reiterating what it stated in its July Order, the court noted that when Stahl appeared for his continued deposition, he (1) was generally unable or unwilling to answer relatively simple questions about the documents he produced or the scope of the production, (2) disclaimed the ability to answer based on the need to review files that he chose not to bring with him, and (3) consistently frustrated defense counsel's legitimate efforts by providing exceedingly evasive responses on a number of listed topics. To the extent Stahl "made any attempt to identify what was included in the document production, his response typically devolved into a meaningless mantra regarding producing documents previously withheld based on a relevancy objection." The court concluded that Stahl's actions "reflect[ed] unacceptable gamesmanship of the highest order." The court ordered that Stahl's continued deposition would take place at the office of a discovery referee. The next day, the court noted that the parties submitted on the tentative ruling and confirmed the tentative ruling as its order.

On January 23, the Stahl Plaintiffs submitted written "objections" to the court's tentative ruling. The following day, the court issued an ex parte minute order denying the objections, stating that the parties had the opportunity to appear for oral argument on January 18 and when neither party appeared, it confirmed its order. Thereafter, the Stahl

3

Plaintiffs filed an opposition to Defendants' declaration regarding the issuance of sanctions.

On February 1, the court stated that it previously determined that "Stahl's evasive answers and failures to answer were not justified" and that "the only remaining issue [was] the appropriate amount of the sanction" under former subdivision (f) (current subdivision (j)) of Code of Civil Procedure section 2025.480. (Undesignated statutory references are to the Code of Civil Procedure.) It awarded Defendants a total of $10,625 in sanctions, consisting of $1,050 in attorney fees for the October deposition, $7,350 as reasonable fees in bringing the motion and $2,225 in costs. It also stayed the payment of the sanctions pending any appeal. During oral argument, Stahl asked the trial court what documents he needed to bring to his deposition. The court responded with the following:

> "I've left it to you, Mr. Stahl. . . . [H]aving gone through that experience, you understand the nature of the questions and what's going to be asked with respect to the documents, and you need to bring with you whatever you need to be able to answer those questions. [¶] Frankly, in review[ing] the transcript of the deposition, I found it to be difficult to believe that you couldn't provide any information in response to many of the questions. So I'm not telling you that you have to bring any particular document or quantity of documents. If you can provide the basic information that's being requested without any documents, don't bring any at all. [¶] On the other hand, if you're taking the position, as you appeared to in your deposition, that you can't answer any questions because you don't have the documents, then I guess you're going to have to bring the documents. And if you have to bring them on a CD, or you have to bring them however you want. . . . But, you need to be prepared to answer reasonable questions."

The Stahl Plaintiffs timely appealed from the January 18 and February 1 orders. During the pendency of the appeal, we requested that the parties submit letter briefs

4

addressing why that portion of the appeal from the order granting in part Defendants' motion to compel further deposition testimony should not be dismissed and the appeal limited to the order granting sanctions against the Stahl Plaintiffs. We have read and considered the parties' submissions.

DISCUSSION

I. *Appealability*

The Stahl Plaintiffs' notice of appeal indicates they are appealing from an order issued January 18 that granted in part Defendants' motion to compel further deposition testimony. They also appeal the February 1 order that granted sanctions against them. Generally, orders pertaining to discovery are not appealable (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432-1433 (*Doe*)) and must await appeal from a final judgment in the action (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 264). The Stahl Plaintiffs impliedly recognize this authority, but argue the January 18 order granting the motion to compel further deposition testimony should nonetheless be appealable because within that ruling, the trial court ordered that they pay all fees for a discovery referee, while leaving open the possibility that the court might reallocate part of those fees. They claim that they have already paid $10,390 for the discovery referee and this payment as a "'further sanction'" satisfies the minimum for appellate jurisdiction under subdivisions (a)(11) and (12) of section 904.1.

Even assuming, without deciding, the dubious merit of this assertion, we note that the opening brief is devoid of any argument regarding the requirement that the Stahl Plaintiffs pay for the discovery referee. Thus, the Stahl Plaintiffs have not challenged

5

that portion of the January 18 order they claim provides appellate jurisdiction. The January 18 order is not appealable and this appeal is limited to the order granting sanctions against the Stahl Plaintiffs. The Stahl Plaintiffs correctly note, however, that the two orders are intertwined. Accordingly, to determine the propriety of the sanctions award, we must necessarily address the propriety of the motion that requested the sanctions.

## II. *Applicable Law*

California discovery law authorizes a trial court to impose a monetary sanction for conduct amounting to "misuse of the discovery process." (§ 2023.030.) Misuse of the discovery process includes "[m]aking an evasive response to discovery." (§ 2023.010, subd. (f).) Additionally, a "court *shall* impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel an answer or production, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2025.480, subd. (j), italics added.)

"In a variety of similar contexts, the phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact." (*Doe*, *supra*, 200 Cal.App.4th at pp. 1434-1435.) "The burden of proving 'substantial justification' for failing to comply with a discovery order compelling answers or production of documents and opposing a motion to compel compliance is on the losing party claiming that it acted with 'substantial justification.'" (*Id.* at p. 1435.)

6

We review the trial court's imposition of a discovery sanction for abuse of discretion. (*Ibid.*) "'A court's decision to impose a particular sanction is "subject to reversal only for manifest abuse exceeding the bounds of reason."'" (*Ibid.*)

### III. *Analysis*

The Stahl Plaintiffs contend the trial court abused its discretion in ordering sanctions because (1) it relied on an untimely filed motion that was not preceded by the statutorily demanded meet and confer obligations, (2) it denied them their right to a hearing, and (3) it relied on grounds in its orders that were not raised in the motion and Stahl had answered the questions as best as possible. The Stahl Plaintiffs do not challenge the amount of sanctions awarded. We address each contention in turn.

### A. Propriety of Motion

### 1. Meet and Confer Obligation

"The Discovery Act requires that, prior to the initiation of a motion to compel, the moving party declare that he or she has made a serious attempt to obtain 'an informal resolution of each issue.' [Citations.] This rule is designed 'to encourage the parties to work out their differences informally so as to avoid the necessity for a formal order. . . .' [Citation.] This, in turn, will lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants through promotion of informal, extrajudicial resolution of discovery disputes. [Citations.]" (*Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1435.)

"A determination of whether an attempt at informal resolution is adequate . . . involves the exercise of discretion. The level of effort at informal resolution which

satisfies the 'reasonable and good faith attempt' standard depends upon the circumstances. In a larger, more complex discovery context, a greater effort at informal resolution may be warranted. In a simpler, or more narrowly focused case, a more modest effort may suffice. The history of the litigation, the nature of the interaction between counsel, the nature of the issues, the type and scope of discovery requested, the prospects for success and other similar factors can be relevant. Judges have broad powers and responsibilities to determine what measures and procedures are appropriate in varying circumstances." (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431.) "A trial judge's perceptions on such matters, inherently factual in nature at least in part, must not be lightly disturbed." (*Ibid.*) "The trial judge's application of discretion in discovery matters is presumed correct, and the complaining party must show how and why the court's action constitutes an abuse of discretion in light of the particular circumstances involved." (*Id*. at p. 432.)

The Stahl Plaintiffs contend the trial court erred by awarding sanctions against them because Defendants did not adequately attempt to meet and confer before filing their motion. Necessarily implied in the Stahl Plaintiffs' argument is the notion that, had Defendants engaged in a proper attempt to meet and confer, Defendants would have obtained the same result with less time and expense. On this record, we discern no abuse of discretion as the record refutes the inference that any amount of meet and confer would have resolved the matter without court intervention.

The court's July Order addressed the third set of discovery motions brought by the parties. Thus, the motion in dispute constituted the fourth discovery motion before the

8

court.  During the meet and confer process, Defendants noted that at his deposition, Stahl failed to identify any document, refused to identify responsive documents and generally refused to answer most questions.  Stahl asserted that the Defendants had not engaged in a meaningful meet and confer process because they had not identified the specific deposition questions at issue.

This is not a situation, however, where the deponent provided incomplete or evasive responses to questions in a few discrete areas.  Rather, as the trial court found, Stahl engaged in a course of "unacceptable gamesmanship" as he was consistently evasive or generally unable or unwilling to answer relatively simple questions about the documents he produced or the scope of the production.  Our review of the deposition transcript supports the trial court's findings.

For example, the deposition got off to a roaring start when defense counsel marked his notice of continued deposition as an exhibit and asked Stahl whether he recognized the document.  Stahl responded that the first two pages "look like a paper that I was served," but he could not say whether the notice he received was the document shown to him.  When asked whether his deposition was noticed for a specific date and time, Stahl responded, "I would have to look at the actual documents to be certain that that's what it says because I don't commit it -- I did not commit it to memory, the document."  When asked whether he recognized the notice of entry of the court's July Order, Stahl responded, "I may have received this notice.  I mean, I've received a number of notices from you throughout this case, so this may have been one of those."  When asked whether page three of the document looked familiar, the following exchange took place:

9

"Q Does that [document] look familiar to you?
"A That could be a tentative ruling from this case.
"Q Do you think it is?
"A You -- I would have to compare [it] to my records. Are you telling me that it is?
"Q I'm telling you that it is. I want to know if you think it is.
"A Do I think it is? I'd have to look at my own records to make sure, but if you represent that that's what it is, then --"

The notice of deposition requested that Stahl produce documents in a number of categories, including all writings substantiating all Lexis research services costs referenced on Stahl's invoices for the underlying action. When defense counsel asked Stahl about how he billed his clients for Lexis research services the following exchange took place:

"Q Did you produce any invoices for Lexis research services?
"A I'm not sure what you mean.
"Q An invoice -- do you receive an invoice -- how are you billed for Lexis?
"A During the case at the time, I'm not even sure I remember. I don't recall.
"Q How are you billed now?
"A I'm not sure either, so -- these are just things that I -- you know -- I set it up and it runs in the background, but I'm not -- you know, these kinds of arrangements, I'm not, you know, following up with that on a day-to-day basis.
"Q But you pass these costs along to your clients, don't you?
"A Yeah.
"Q Okay. So is it important to you in passing your costs along to your clients, that you actually know what your costs are?
"A Well, yeah, so --
"Q Okay. So how were you billed for Lexis in this time frame?
"A I don't recall."

Thereafter, defense counsel asked Stahl a variety of simple questions regarding how Lexis billed Stahl, with Stahl generally answering, "I'm not sure" or "I don't recall." Stahl could not recall whether he received invoices from Lexis, yet he claimed that he

produced all documents responsive to the document request and if he did not produce any invoices that meant he searched, but could not find them. Stahl could not recall whether he contacted Lexis to obtain invoices and did not know whether he paid for his Lexis services with a credit card or whether he even still subscribed to Lexis.

The Code of Civil Procedure expressly allows a trial court to order sanctions for evasive discovery responses. (§ 2023.010, subd. (f).) The trial court found Stahl's answers to be evasive and the record supports this conclusion. Put simply, the Stahl Plaintiffs have not shown that the trial court abused its discretion when it rejected their objections to the meet and confer process, found Stahl's responses to be evasive and awarded sanctions.

2. Untimely Motion

a. Facts

It is undisputed that Defendants filed their motion on December 28, 2012, two days late for the hearing date noticed. That afternoon, the Stahl Plaintiffs sent an e-mail noting that the motion was untimely. Defendants responded, offering the Stahl Plaintiffs two additional days beyond the statutory deadline of January 7 to file their opposition or to January 9, if the Stahl Plaintiffs e-mailed the opposition, stating they would obtain the court's approval for the altered briefing schedule. Defendants requested that the Stahl Plaintiffs agree to that plan or propose "some other plan that we can approach the court with."

Defense counsel spoke to Stahl on December 31, 2012, after he did not receive a response to his proposed plan. Stahl was not amenable to having two extra days to

11

prepare the opposition or approaching the court about a continued hearing date. When asked whether he was willing to discuss any way to have the motion heard while avoiding any prejudice to him or extra burden upon the court, Stahl replied, "no." Stahl took the position that the motion needed to be withdrawn. After stating that he needed "to prepare [his] opposition," Stahl ended the call.

On the evening of New Year's day, Stahl sent an e-mail representing that he had told Defendants "that [he could not] wait until the [Superior] Court decides on a request for an extension." Defendants notified the court that Stahl would not agree to any altered briefing schedule or continuance and the Superior Court scheduled an ex parte hearing. On January 2, Defendants notified the Stahl Plaintiffs of the ex parte hearing, and continued their attempts to resolve the issues. Stahl responded that he would "have to get [his] opposition papers to the attorney service [on] Friday," January 4 and refused to participate in the ex parte hearing scheduled for that day. Defendants offered to accept electronic service of the papers and file them on Monday, if necessary, so that Stahl did not need to have his papers finalized by Friday. They also offered to accept service of the papers electronically on Wednesday, January 9 and file the papers for Stahl. Stahl refused those offers, stating, in part, "I will not rely on your services to file papers for me."

At the ex parte hearing on January 4, the court issued an order accepting the motion, confirming the hearing date, and altering the briefing schedule to give the Stahl Plaintiffs until January 9 to file any opposition, stating the opposition could be served electronically. Stahl, however, filed his opposition that day.

12

b.  Analysis

The Stahl Plaintiffs contend that the sanctions order must be reversed because the insufficient notice constitutes grounds for vacating the order.  They also assert the trial court denied them due process and abused its discretion when it "impermissibly cut the minimum [statutory] notice period . . . by declaring, *after* Stahl's time to prepare an opposition had passed, that a new briefing schedule applied."  The Stahl Plaintiffs assert that the "proper action . . . would have been to continue the hearing date and to give Stahl 'at least 16 court days before the hearing' date, as required by section 1005, since no new briefing schedule had been adopted at the time of the Motion's due date."

Motion papers must be served and filed at least 16 court days before the selected hearing date.  (§ 1005, subd. (b).)  The court, however, may permit a motion to be heard on shorter notice.  (*Ibid.*)  It is undisputed that Defendants filed their motion two days late, thus, depriving the Stahl Plaintiffs of two days in which to file their opposition.  Nonetheless, "the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion.  [Citations.]  This rule applies even when no notice was given at all.  [Citations.]  Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective."  (*Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930.)

Here, the Stahl Plaintiffs waived the notice defect by filing an opposition on the merits.  Even aside from the waiver issue, in order to obtain a reversal based on

13

insufficient notice, "the appellant must demonstrate not only that the notice was defective, but that he or she was prejudiced." (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289, italics omitted.)  Here, the Stahl Plaintiffs failed to affirmatively demonstrate that they suffered any prejudice.  Accordingly, the Stahl Plaintiffs failed to show that the sanctions order must be reversed based on the untimely filing of the moving papers.

B.  Right to a Hearing

a.  Facts

In its January 17 tentative ruling, the trial court stated it was "inclined to award" sanctions against Stahl.  It continued the hearing until February 1 "to allow [D]efendants to file a supplemental declaration as to the amount of attorneys' fees incurred in bringing the motion."  The Stahl Plaintiffs were allowed to file a response.  The following day, the trial court confirmed its tentative ruling (the first ruling) after neither side requested oral argument.  The Stahl Plaintiffs argued against the imposition of sanctions, stating that they did not appear on January 18 because they believed the motion was continued.

In its second tentative ruling for the February 1 hearing, the court stated the matter was continued from January 18 "for purposes of determining the amount of monetary discovery sanctions to be imposed on plaintiff."  It noted that it previously "determined that Stahl's evasive answers and failures to answer were not justified.  Accordingly, the only remaining issue is the appropriate amount of the sanction."  At the commencement of oral argument after its second tentative ruling, Stahl indicated his desire to be heard on the first ruling.  The court stated that "we're not going to be talking about the prior order."

14

After the parties made their appearances, Stahl confirmed with the court that it was refusing to hear oral argument on the first ruling.

b. Analysis

The Stahl Plaintiffs contend the trial court abused its discretion in ordering sanctions and violated principles of due process because it denied them the right to a hearing on whether sanctions should be awarded. They note that the wording of the court's first ruling conveyed that it had not yet decided to award sanctions and that the motion was continued on this issue. At oral argument on the second tentative ruling, however, the court then refused to allow the Stahl Plaintiffs to orally argue the imposition of sanctions.

We understand the frustration of the Stahl Plaintiffs. We agree that the language "inclined to award sanctions" suggests the trial court had not yet decided to award sanctions and that the issue would be decided on February 1. The trial court, however, dispelled this notion in its second tentative ruling when it stated that its prior ruling justified sanctions and the "only remaining issue" was the amount of any sanction. At the commencement of oral argument, Stahl inquired whether the court would hear oral argument on the first ruling; however, he *never* explained to the court his understanding that the first ruling did not award sanctions and he should thus be entitled to orally argue against the imposition of sanctions. Accordingly, the trial court was never apprised of the issue that the Stahl Plaintiffs are currently arguing on appeal.

Typically, we will not consider a challenge to a ruling if an objection could have been made, but was not, in the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979)

15

23 Cal.3d 180, 184-185, fn. 1; *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 (*Boyle*).) The forfeiture doctrine is intended to encourage parties to bring errors to the attention of the trial court, so trial courts have the opportunity to correct them. (*Boyle*, *supra*, at p. 649.) This principle applies here as the Stahl Plaintiffs never informed the trial court of the issue it is currently arguing, namely, that their reading of the first ruling suggested that the court had not yet decided whether to award sanctions and that the court was transgressing principles of law by depriving them of the right to a hearing. Therefore, we deem this argument forfeited.

Even assuming the argument was not forfeited, the trial court acted within its discretion when it declined to hear oral argument. Defendants' moving papers informed the Stahl Plaintiffs of their intent to seek monetary sanctions. The Stahl Plaintiffs had the opportunity to respond to the request in their opposition to the motion and in their additional briefing after the first ruling. A court may impose monetary sanctions "after notice to any affected party, person, or attorney, and after opportunity for hearing." (§ 2023.030, subd. (a).) Nonetheless, a statute's use of the term "heard" or "hearing" ordinarily does not imply a requirement that oral argument be heard unless the context of the term or other specific language indicates the contrary. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1248.) Rather, it is well established that a trial court is not required to listen to oral arguments in support of a motion, but may, in its discretion, decide the matter solely based on the submitted written arguments and evidence. (*Wilburn v. Oakland Hospital* (1989) 213 Cal.App.3d 1107, 1111.) Thus, even if this issue had been preserved, we would reject it on the merits.

16

C.  Basis of Ruling

The Stahl Plaintiffs assert they were denied a hearing on the substance of the questions in dispute when the trial court refused to hear oral argument on the first ruling. As discussed above, we reject this assertion. (*Ante*, Part III.B.b.) They also contend the sanctions award must be reversed because they were not informed which questions the court relied on for imposing sanctions. In making this argument, the Stahl Plaintiffs refer to that portion of the court's first ruling where the court referred to specific pages of the deposition transcript as support for its conclusion that Stahl provided evasive responses. Stahl contends that the pages cited by the court contain over 20 questions, many of which were not included in Defendants' separate statement; thus, he was denied the opportunity to present a defense. We reject this assertion.

The trial court found that Stahl was generally unable or unwilling to answer relatively simple questions about the documents he produced or the scope of the production and disclaimed the ability to answer based on the need to review files that he chose not to bring with him. The court also found that Stahl consistently provided "exceedingly evasive responses" on a number of listed topics. To support these findings, the court cited specific pages of the deposition transcript. The trial court did not order that Stahl provide further responses to any particular question; rather, it cited these pages as support for its implied conclusion that sanctions were warranted because Stahl's evasive responses constituted a misuse of the discovery process. (§§ 2023.030, 2023.010, subd. (f).) Although Stahl asserts he answered all questions as best as possible, the trial court disagreed and the record supports this conclusion. Accordingly,

17

we reject the Stahl Plaintiffs' argument that the sanctions award must be reversed because they were denied the opportunity to provide a defense.

## DISPOSITION

The appeal from the order granting, in part, Defendants' motion to compel further deposition testimony is dismissed.  The sanctions order is affirmed.  Respondents are entitled to their costs on appeal.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.