Filed 10/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS S. TEDESCO et al., | |
| Plaintiffs and Appellants, | G061197 |
| v. | (Super. Ct. No. 30-2019-01078628) |
| LAURA K. WHITE, as Co-trustee, etc., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, David L. Belz, Judge. Affirmed.

Herzog, Yuhas, Ehrlich & Ardell, Ian Herzog and Evan D. Marshall for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Adam F. Streisand, Nicholas J. Van Brunt and Valerie E. Alter for Defendants and Respondents Laura K. White, Julie M. Bas and Sandra L. Kay.

Freeman, Freeman & Smiley, Saul Ewing, Geraldine A. Wyle, Jeryll S. Cohen and Thomas C. Aikin for Defendant and Respondent David M. Wilson.

\*          \*          \*

A bulldozer can move piles of dirt from one place to another. But when the goal is to move minds rather than dirt, employing a bulldozer may be counterproductive. The bulldozer in this case is appellant Debra Wear's counsel. In our prior nonpublished opinion, *Tedesco v. White* (June 15, 2022, G059883) (*Tedesco 1*), we made clear to these lawyers that "[w]e do not confuse aggressive argument with persuasive advocacy." Although the aggression has not abated, our view of it remains unchanged.

This appeal challenges an order of discovery sanctions in the amount of $6,000. But that sanctions order does not appear to be counsel's real concern; if it were, counsel would have noticed an appeal from that order on their own behalf as well, since counsel were held jointly and severally liable for the same sanction.[1] They did not.

Instead, counsel attempt to use that sanctions order as a basis for challenging the merits of the trial court's nonappealable order quashing Wear's document subpoena, and then to further use the trial court's analysis underlying that discovery ruling into a basis for reviewing a separate order we have already ruled cannot be appealed. All of this seems to be in furtherance of counsel's broader quest: to again collaterally attack the validity of a conservatorship over the estate of Thomas S. Tedesco, which was established in the probate court in Riverside county in 2015. In keeping with that sweeping goal, Wear's counsel has presented us with an appellant's appendix in excess of 9,000 pages.

---

[1] Attorney Russell L. Davis, who also represented Wear in connection with the deposition subpoena and the opposition to Wilson's motion to quash, is similarly liable for payment of the monetary sanction. But he is not involved in this appeal as either counsel or client.

That same attack has already been repeatedly rejected by both the probate court and the appellate court in Riverside County, and also by a trial in Orange County Superior Court and this court in *Tedesco 1*. Counsel's dogged refusal to acknowledge those losses (other than by disparaging some of the courts involved)[2] changes nothing.

In any event, as we explain below, our jurisdiction here is limited to the issue of sanctions. The court justified its order on the basis that "one of more of the requirements of the subpoena was oppressive" and "the subpoena was a misuse of discovery," which followed its determination that the subpoena should be quashed on the basis it was overly broad and constituted an unreasonable intrusion on the privacy rights of Wilson's conservatee, Tedesco. Our review is limited to those issues.

Wear fails to directly challenge the court's pertinent determinations, let alone demonstrate why the court abused its discretion in making them. We find no error in the court's ruling. We therefore affirm. [3]

**FACTS**

This case arises out of disputes over the propriety and enforceability of amendments to Tedesco's living trust, which was conceived of as part of a family estate plan Tedesco created with his late wife, Wanda Tedesco. The trust came into being

---

[2] In appellant's opening brief, counsel once again explicitly disparages the integrity of our colleagues in the Fourth District, Division 2. We caution counsel about such tactics.

[3] Respondents Laura K. White, Julie M. Bas, and Sandra L. Kay (Tedesco's adult daughters and the cotrustees of the Thomas S. Tedesco Living Trust) use their respondents' brief solely to argue for dismissal of the appeal on the ground Wear lacks standing to participate in the trial court proceeding. The assertion is misplaced. This appeal is from an order imposing a monetary sanction against Wear. As the subject of that order, Wear has standing to appeal from it, without regard to whether she has standing to participate in this case on the merits.

3

following Wanda Tedesco's death in 2002, and it was later restated. The primary beneficiaries of the restated trust are the cotrustees.

Specifically, Wear questions the propriety of a June 2013 amendment to the restated trust that limited Tedesco's ability to further amend the restated trust without the concurrence of the cotrustees. Wear also challenges other actions by the cotrustees and seeks a court order to suspend their powers as cotrustees.

For their part, the cotrustees have petitioned the court to validate the 2013 amendment, and thus to establish the invalidity of a purported 2020 amendment to the restated trust.[4] The 2020 amendment indicates it is Tedesco's intent to revoke the restated trust entirely, but due to Tedesco's concerns that he may be unable to accomplish that amendment, he modifies its provisions to (1) remove cotrustees as trustees and as beneficiaries, and (2) leave 75% of the assets to his current wife, Gloria Tedesco, and in the event she does not survive him, to her two daughters (including Wear).

Wear also contends that Wilson has abdicated his responsibilities as Tedesco's conservator by refusing to challenge the validity of the 2013 amendment or by otherwise addressing the allegedly fraudulent actions of Tedesco's daughters. She alleges Wilson refused to do so "despite findings of fiduciary breach by his own attorneys, Parker Mills, as set forth in a letter of July 16, 2016,"[5] and further that his inaction was "in exchange for payment of exorbitant fees of himself and his lawyers by the daughters from the trust. [Wilson] and his attorneys thus became the daughters' tool."

---

[4] We say "purported" not because we have developed any opinion about the propriety of this 2020 amendment, but rather to acknowledge that it fails to comply with the explicit requirements of the 2013 amendment.

[5] The Parker Mills letter Wear is concerned about is actually dated July 5, 2016.

In June of 2021, Wear served a notice of deposition on the custodian of records at Parker Mills, LLP (Parker Mills), the law firm that previously represented Wilson and allegedly found the "fiduciary breach" Wear is concerned about.  The subpoena requested that the custodian of records for Parker Mills produce eight separate categories of documents:

"1.  Each record, writing and/or electronically stored data that in any way relate or refer to any communication concerning Thomas S. Tedesco, or any account, asset or trust in which Thomas S. Tedesco has or at any time had an interest, or TW Tedesco Properties.

"2.  Each record, writing and/or electronically stored data that in any way relate or refer to any investigation concerning Thomas S. Tedesco, or any account, asset or trust in which Thomas S. Tedesco has or at any time had an interest, or TW Tedesco Properties.

"3.  Each record, writing and/or electronically stored data that in any way relate or refer to any communication with MICHAEL BAS, ROBERT LATIMER, LATIMER & MASSONI, MICHAEL BAS, LAURA WHITE, SANDRA KAY, JULIE BAS or their attorneys including SHEPPARD MULLIN RICHTER & HAMPTON, or with DAVID WILSON or his attorneys, including HOLLAND & KNIGHT, concerning Thomas S. Tedesco, or any account or trust in which Thomas S. Tedesco has or at any time had an interest, or TW Tedesco Properties.

"4.  Each record, writing and/or electronically stored data that in any way relate or refer to any communication with JEFFER MANGELS BUTLER & MITCHELL or any of its attorneys, including BURTON MITCHELL, concerning either Thomas S. Tedesco, or any account, asset or trust in which Thomas S. Tedesco has or at any time had an interest, or TW Tedesco Properties.

"5. Each record, writing and/or electronically stored data referring or pertaining to David Wilson or any attorneys for David Wilson concerning or relating to

Thomas S. Tedesco and/or any trust, property, assets and/or conservatorship proceeding related to Thomas S. Tedesco, or TW Tedesco Properties.

"6. Any and all Partnership Agreements for TW Tedesco Properties Limited Partnership.

"7. Each record, writing and/or electronically stored data referring or pertaining to Kenneth Jenkins or any attorneys for Kenneth Jenkins concerning or relating to Thomas S. Tedesco and/or any trust, property, assets and/or conservatorship proceeding related to Thomas S. Tedesco, or TW Tedesco Properties.

"8. Each record, writing and/or electronically stored data referring or pertaining to any communication with Terence Nunan and/or David Humphrey concerning or relating to Thomas S. Tedesco and/or any trust, property, assets and/or conservatorship proceeding related to Thomas S. Tedesco, or TW Tedesco Properties."

In December 2021, Wilson moved to quash the Parker Mills deposition subpoena and requested an award of $12,105 in monetary sanctions against Wear. He argued the subpoena should be quashed because (1) Wear's efforts were in violation of an elder abuse restraining order issued against her; (2) Wear lacked standing to seek any relief with respect to the restated trust; (3) Wear failed to serve Tedesco with a notice to consumer as required by Code of Civil Procedure section 1987.1; and (4) the subpoena was overly broad, unduly burdensome and reflected an improper effort to seek Tedesco's private confidential financial records and information.

Wear opposed the motion; she disputed Wilson's procedural claims and relied on the July 2016 Parker Mills letter to support her claim that all the documents in Parker Mills' possession were discoverable because "Wilson used Parker Mills as investigator [and thus] Parker Mills' knowledge is directly relevant to Wilson's knowledge of fraud, and the practice of fraud, perjury, elder abuse and fiduciary abuse by the daughters and their lawyers, and to the necessity of their removal. That pervasive

6

dishonesty of the daughters and the lawyers who are presently looting the trust implicates the crime-fraud exception."

Wear accused Wilson and his attorneys of significant wrongdoing: "their dishonesty about the results of the Parker Mills [2016] investigation, their retention of funds unlawfully disbursed by the daughters from Tedesco's personal assets, their agreement to assist the daughters['] fraud by perjury in exchange for payment with misappropriated funds, all contribute to a prima facie case that Wilson and Holland & Knight[6] are engaged in an effort to deny Tedesco the right to petition, the right to hearing on the merits of his claims, the right to recover stolen assets, and the right to defend his interest in trust proceedings—that they are engaged in a criminal enterprise, which Holland & Knight has been retained to execute."

In January 2022, the court granted the motion to quash. The court explained that, although it was not persuaded by Wilson's arguments regarding the elder abuse restraining order, Wear's lack of standing to propound discovery, or her failure to serve Tedesco with a notice to consumer, it agreed with his contentions that the subpoena was overly broad and it represented an unreasonable intrusion into Tedesco's right to maintain the privacy of his financial information. The court also concluded Wear failed to explain how the 2016 Parker Mills letter was relevant to her claimed interest as an objector, which comes by way of the 2020 trust amendment that favors Wear and her mother.

The court awarded $6,000 in sanctions against Wear and her counsel, jointly and severally, on the grounds that "one or more of the requirements of the subpoena was oppressive and, further, that the subpoena was a misuse of discovery."

---

[6]     Holland & Knight is the law firm that represented Wilson in filing the motion to quash.

## DISCUSSION

1. *Scope of the Appeal and Standard of Review*

The notice of appeal, which was filed on behalf of both Wear and Stephen Carpenter (claiming to be acting as the guardian ad litem of conservatee Thomas Tedesco), sought to challenge two rulings: the January 7, 2022 order quashing the document subpoena Wear had served on attorneys representing Wilson, and (2) a subsequent order denying an application—purportedly filed on behalf of Tedesco—to distribute funds from the trust to pay for claims favored by Wear and her counsel.

Wilson moved to dismiss the appeal, arguing the order quashing the subpoena was not appealable, and that neither Carpenter nor Wear had standing to challenge the latter order on Tedesco's behalf. We granted that motion in part, dismissing the appeal from the second order entirely on standing grounds and explaining the first ruling was appealable only as to the order awarding monetary sanctions against Wear.[7] We stated explicitly that Carpenter lacked standing to challenge the sanctions, which were imposed against him. (*Tedesco v. White* (Aug. 15, 2022, G061197) [nonpub.opn.].)

The opening brief on appeal, which counsel purported to file on behalf of both Wear and Carpenter, largely ignored our ruling. The word "sanctions" appears for the first time at page 30, and it is not mentioned in argument until page 59. The opening brief instead challenges the merits of the order quashing the subpoena, asserting without

---

[7] Wear's notice of appeal reflected she was appealing from the court's January 7, 2022 order quashing the document subpoena Wear issued to Parker Mills "and from ever[y] other subsidiary thereto." While Wilson was correct about the nonappealability of discovery orders, we found the notice of appeal broad enough to encompass the court's additional order of the same date, imposing a $6,000 monetary sanction against Wear and her counsel. Because that monetary sanction was directly appealable pursuant to Code of Civil Procedure section 901.4, subdivision (a)(12), we denied the motion to dismiss the appeal from the January 7, 2022 order.

analysis that it remains appealable "by reason of the $6,000 sanctions order," and then arguing the subsequent order denying the application to distribute funds was also appealable for essentially the same reasons we already rejected in dismissing that portion of the appeal.

We disagree. In relying on our dismissal ruling, Wilson moved to strike the portions of the opening brief which purport to challenge the order denying the requested distribution of funds, and we granted that motion. That ruling stands.

The appealability of the monetary sanction order does not change the fact the discovery order made on that same date is not appealable. (*Doe v. United States Swimming, Inc*. (2011) 200 Cal.App.4th 1424, 1433 [when sanctions are imposed in connection with a discovery ruling, the "appeal is limited to review of that portion of the . . . order imposing a monetary sanction of over $5,000"].) When reviewing an appealable sanctions order, we review the merits of related orders only to the extent necessary to resolve the challenge to the appealable monetary sanctions.

An order awarding monetary sanctions is reviewed for abuse of discretion, and "we will reverse the trial court only if it was arbitrary, capricious, or whimsical in the exercise of that discretion." (*Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191, disapproved on another point in *Presbyterian Camp & Conference Center, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 516, fn. 17.) "[I]n reviewing the trial court's determination, '[w]e defer to the court's credibility decisions and draw all reasonable inferences in support of the court's ruling.' [Citation.] To the extent the trial court's decision to issue sanctions depends on factual determinations, we review the record for substantial evidence to support those determinations. [Citation.] Thus, our review "'begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trial court].""" (*Id*. at p. 192.)

9

2.  *Justification for Subpoena*

Wear's sole challenge to the sanctions order is to attack the merits of the court's ruling quashing her subpoena. Because our concern here is the sanctions order, our review is limited to those aspects of the court's merits ruling that supported the award of sanctions. Since the court sided with Wear in rejecting Wilson's arguments about (1) the elder abuse restraining order, (2) the notice to consumer, and (3) Wear's standing to participate in the case, we know those issues did not contribute to its decision to sanction Wear and her counsel. We consequently do not address them here.

We also disregard Wear's argument that Wilson is not Tedesco's legitimate conservator, that the conservatorship is "defective" or "invalid," or that Wilson is somehow disqualified from protecting or representing Tedesco's interests in this litigation. We have already ruled in *Tedesco 1* on those issues: "the conservatorship judgment and the orders issued therein are valid and binding for purposes of this case." (*Tedesco 1, supra,* G059883.) Wilson's capacity to represent Tedesco's interests is not subject to further dispute, and as a result every argument which relies on that assertion fails as a matter of law.

3.  *Overbreadth and Privacy Issues*

Instead, we focus on the court's findings that (1) the subpoena was overbroad and an unreasonable intrusion into Tedesco's right to financial privacy; and (2) one or more of the requirements of the subpoena was oppressive and the subpoena was a misuse of the discovery process.

According to Wear's own argument, the July 2016 Parker Mills letter, and the investigation it reflects, "forms the core of the subpoena." But contrary to Wear's assertion that the cotrustees are "the subject of the Parker Mills investigation," the letter is actually directed to Jeffer, Mangels, Butler & Mitchell, LLP (Jeffer Mangels)—which is the law firm that had previously acted as Tedesco's long-time estate counsel. The

letter seeks disgorgement of fees previously paid to Jeffer Mangels based on allegations that it had acted improperly.

Disgorgement is requested for two reasons: first, because Jeffer Mangels allegedly continued to charge for services rendered long after it had been formally discharged as counsel; and, second, because Jeffer Mangels had allegedly been operating under a potential conflict of interest when it drafted the 2013 amendment—which prevented further amendments of the restated trust without the concurrence of both Tedesco and his daughters (the cotrustees)—allegedly because the amendment "offered Mr. Tedesco . . . no estate planning benefit and which [Tedesco] does not recall executing." [8]

The letter draws no conclusions about wrongdoing by Tedesco's daughters, nor does it offer any opinions about the validity of the 2013 amendment to the restated trust. Moreover, the claim that the 2013 amendment offered no estate planning benefit to Tedesco is debatable because he may have shared his daughters' legitimate concern that he could become increasingly vulnerable to the undue influence of persons seeking to obtain a share of the restated trust, and thus wished to ensure the trust was protected from that danger going forward. Indeed, that would be the same instinct that later caused Tedesco to stipulate to the conservatorship established under Wilson's authority.

The allegation that Tedesco did not recall signing the 2013 amendment, if true, is not inherently suspicious because by the time Wilson's counsel made that claim, Tedesco had been the subject of conservatorship proceedings for two years, and under a conservatorship for one. His memory problems at that point of his life were well documented.

---

[8]    The letter suggests the potential conflict created by drafting the 2013 amendment had "ripened" into an actual conflict a month later when Jeffer Mangels "began improperly sharing information received from [Tedesco's doctor] with the Daughters."

Despite the fact the letter accuses only Jeffer Mangels of impropriety, Wear claims "the record shows" that Wilson had "knowledge of the daughter[s'] fraud [but] undertook their defense when they agreed to pay his fees." Wear then points to the fact that in October 2015 (i.e., nine months before the Parker Mills letter), Wilson petitioned the court for instructions allowing him to remain neutral and not undertake an investigation relating to the validity of either the 2013 amendment or of a series of documents executed by Tedesco in 2015, purporting to revoke the restated trust.

In that filing, Wilson acknowledged the existence of evidence questioning the validity of both the 2013 amendment and the 2015 trust documents, and that he was uncertain whether either was valid. He then explained that "[i]t is in Gloria Tedesco's interests to have the [2013 a]mendment invalidated and the Revocation of Trust to be upheld. It is in the Daughters' interest to have all of the documents executed June 4, 2015 invalidated," and he noted that all of those parties were represented by counsel. Based on those facts, Wilson asked the court to require that "the interested parties litigate the validity of these documents rather than the Conservator . . . [which] will allow the Conservator to remain neutral and focus on assisting Mr. Tedesco with managing his personal financial affairs."

Despite Wilson's expressed neutrality and dispassionate description of the family's trust disputes, Wear asserts the filing reflects Wilson "not only admitted the factual basis for the [removal of] the daughters [as cotrustees], but admitted that Tedesco was likely owed millions, which should have gone into the conservatorship estate." The record before us does not support this argument.

All eight categories of documents Wear demanded in her subpoena are broadly drawn. Taken together, they seek all documents, writings or communications, in whatever form, relating or referring to Tedesco or any of his accounts or assets— including, but not limited to, those that are held by the restated trust. Nothing ties or limits any of the categories to the July 2016 Parker Mills letter, or to the investigation

alluded to in that letter. We believe the trial court's concerns that regard were well founded.

In its ruling, the court stated the categories of documents are overbroad "on their face . . . as they are without limitation as to time." Wear ignores that specific conclusion, and by doing so, she effectively concedes the point. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"]; (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 [Issues not properly raised or that lack adequate legal discussion will be deemed forfeited].)

The court also concluded that, because Wear seeks discovery of Tedesco's private financial information, it was required to balance Wear's interest in disclosure against Tedesco's protected privacy interest and reasonable expectation of privacy. (See *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557.) After doing so, the court concluded the subpoena threatened a serious intrusion into Tedesco's protected privacy interest, and that Wear had failed to raise a legitimate and countervailing interest in disclosure.

Wear contends the court erred in reaching that conclusion because "[i]t was ludicrous to allow a patently conflicted pseudo 'conservator' to assert Tedesco's privilege or privacy rights in a manner that was plainly adverse to Tedesco's interests [when there is evidence] that demonstrated fiduciary breach by Wilson and the daughters, and that justified removal from office of both Wilson and the daughters." We disagree. Because Wilson is Tedesco's duly appointed conservator, it would have been inappropriate not to allow him to assert the claim of financial privacy on Tedesco's behalf.[9]

---

[9] Even if evidence of fiduciary breach sufficient to justify Wilson's removal as Tedesco's conservator existed (we have not seen any), that evidence should be presented to the court that appointed him.

13

Stated plainly, as long as Wilson remains as Tedesco's conservator, it is he—not Wear or her counsel—who is empowered to decide what claims are in Tedesco's interest to make. After disputing Wilson's standing to assert Tedesco's privacy interests, Wear fails to demonstrate the court erred in its required balancing of the interests in this case.

4. *Award of Sanctions*

Finally, the court's award of sanctions was based on findings that the subpoena was oppressive and a misuse of discovery. Wear's opening brief fails to rebut either charge; indeed, it confirms the latter one.

Wear attempts to justify her requested intrusion into Tedesco's financial affairs by arguing that the "invalidity of the conservatorship means that [Tedesco's] incompetence renders the trust irrevocable and [she] and Gloria have standing to complain of the daughter[s'] breach of fiduciary duty and Wilson's fraud and collusion." She then asserts Wilson's "failure to account renders it necessary to determine what assets [Tedesco] had, whether they were accounted for by the conservator or trustees; whether they had been misappropriated; whether they should have been held in or recovered by the trust. The requests are directed to these issues."

In other words, Wear effectively admits that her goal in propounding the subpoena—however flawed her justification—was to obtain and examine all of Tedesco's financial records, for the specific purpose of conducting an expeditionary search for unidentified financial misconduct. That is a misuse of the discovery process; by itself it justifies the award of monetary sanctions.

14

**DISPOSITION**

The order of sanctions is affirmed.  Respondents are to recover their costs on appeal.


                                        GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.


15