Filed 2/23/26  Bakewell v. OneUnited Bank CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DANNY BAKEWELL, SR., | B341066 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV13703) |
| ONEUNITED BANK et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anne Richardson, Judge.  Affirmed in part and dismissed in part.

Markun Zusman & Compton, Edward S. Zusman and Kevin K. Eng for Defendants and Appellants.

Ivie McNeill Wyatt Purcel & Diggs, Rickey Ivie; Pollak, Vida & Barer, Daniel P. Barer and Karen M. Stepanyan for Plaintiff and Respondent.

_____

# INTRODUCTION

This appeal follows the imposition of $22,685 in discovery sanctions against defendant OneUnited Bank (OneUnited) and its general counsel Robert Cooper. The trial court awarded the sanctions in connection with its grant of plaintiff Danny Bakewell, Sr.'s motion to compel Cooper's deposition. OneUnited resisted Bakewell's attempts to depose Cooper, claiming Cooper's back pain so impacted his cognitive and physical abilities that he was completely unavailable. The trial court disagreed, finding that sub rosa video evidence of Cooper engaging in everyday activities and his conclusory doctors' notes showed there was no substantial justification for the claim that Cooper was too unwell to participate at all in a deposition.

OneUnited argues we should reverse the monetary sanctions order, which the court imposed jointly and severally against OneUnited and Cooper. We find no abuse of discretion and affirm. Defendant Kevin Cohee (OneUnited's majority owner, chairman, and chief executive officer) has also appealed. We dismiss his appeal as the court imposed no sanctions against him; because he is not aggrieved by the order at issue, he lacks standing to appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Events Giving Rise to the Lawsuit

In 2000, Cohee allegedly urged Bakewell to invest $250,000 in OneUnited preferred stock based on Cohee's personal guarantee that the shares could be redeemed at any time for the original amount plus accumulated dividends. Bakewell asserts he agreed and that Cohee assured Bakewell that Cohee would document the transaction, but Bakewell never received any stock

certificates or other records confirming his stock ownership. In 2019, Bakewell attempted to redeem the shares, but OneUnited and Cohee refused, claiming Bakewell had no redemption rights. Bakewell sued Cohee and OneUnited for, among other claims, breach of contract, fraud, and breach of fiduciary duty.

## B. The Discovery Dispute

### 1. *Deposition Notices and Objections*

Bakewell sought to depose Cooper, who purportedly had direct involvement in the stock transaction at issue and, due to his long tenure as OneUnited general's counsel, knew about the corporate procedures relevant to Bakewell's claims. Bakewell noticed Cooper's deposition three times between September 2022 and April 2023. The record contains no objections to these notices, and it appears Bakewell agreed to continue the deposition in each instance.

On May 11, 2023, Bakewell noticed Cooper's deposition a fourth time, for June 1, 2023. OneUnited served objections to the notice, stating that it had repeatedly informed Bakewell that "Cooper is on a medical leave of absence of unknown duration and is unable to participate . . . until further notice."

### 2. *The Court Conditionally Compels Cooper's Deposition*

Bakewell timely moved to compel Cooper's deposition, arguing that OneUnited's claim that Cooper was medically unable to sit for deposition was unsubstantiated and it had not identified a date on which Cooper could be deposed. Bakewell also sought monetary sanctions.

In opposition, Cooper provided a declaration stating that he resides and works in Boston, Massachusetts. In April 2023, he began experiencing ill effects from a medical condition that

prevented him from participating in strenuous activities, including sitting for deposition, until his doctor released him to do so. He further stated that his doctor provided him with a note, but Cooper declined to share the note due to privacy concerns.

On September 19, 2023, the trial court found Bakewell "has a substantial basis to depose Mr. Cooper" and conditionally granted the motion to compel. It ordered that OneUnited produce Cooper for deposition or "provide medical documentation that states: 1) the limitations on his ability to testify at deposition, including a videotaped deposition [meaning by remote videoconference], and 2) the length of time that such limitations have been, and foreseeably will be, in effect. It is not necessary for the note to provide the specific nature of Mr. Cooper's ailments." The court denied Bakewell's request for monetary sanctions.

By a September 28, 2023 email, the defendants provided a redacted doctor's note to Bakewell's attorney under an "[a]ttorney's [e]yes [o]nly" designation. The note is not included in the record.

By October 20, 2023, Cooper remained unavailable for deposition. The court continued the trial date (which was less than a month away) and the discovery cut-off as to Cooper's deposition "and/or [the deposition of] a PM[Q (person most qualified)] as to the issues Cooper would have been deposed about, had he been able to attend his deposition." The court also ordered defendants to provide the name of the doctor who provided the note.

By an October 21, 2023 email, defendants provided a revised doctor's note under an "attorney's eyes only" designation. Although it is unclear if it is the doctor's note attached to the

4

October 21, 2023 email, the record includes a letter dated October 11, 2023, on Massachusetts General Hospital letterhead. The letter states, "Cooper is a patient under my care," "has [an] ongoing illness and infirmity for which he has and will be undergoing further evaluation and management," and "is unable to participate in an in-person or video[-]taped deposition and is unable to do so until he has recovered and . . . cleared for his duties." The letter's author could not "provide an accurate estimate of his time frame to recovery." The letter included an illegible signature, and the typed name of the signatory was redacted.

3.  *Bakewell Hires a Private Investigator*

On November 21, 2023, Bakewell hired a private investigator to verify whether Cooper was really disabled. The investigator conducted between four to 16 hours of surveillance per day on December 4, 5, 6, 16, 18, 19, 25, and 28, 2023, and January 8, 9, 11, 12, and 22, 2024.

Videos taken by the investigator, which include date and time stamps, show Cooper driving to work on Monday, December 4, 2023 between 10:22 and 10:39 a.m., and getting into his car on December 5, 2023 at 8:32 a.m. On December 6, 2023 at 8:18 a.m., Cooper drives, pulls into a parking garage, then walks out of the parking garage. At 10:03 a.m. that same day, Cooper's car is double parked with its hazard lights on in front of OneUnited's office building. On December 19, 2023 at 8:44 a.m., the video shows Cooper driving, getting out of his car, looking through items in the trunk, walking away, going up a few steps into a building, and then returning to his car. On January 8, 2024 at 11:50 a.m., Cooper steps out of his residence, walks down two to three stairs holding a plastic shovel with his right hand

5

and a cell phone in his left. While speaking on the phone, he uses the shovel with one of his hands to scrape snow off his car. At 11:56 a.m., he goes up the stairs to his home, turns around, and returns to the car. He uses two hands to scrape snow off the side of the car and goes up and down the stairs again before getting into his car. The video resumes at 12:07 p.m., showing Cooper scraping snow off his windshield using a hand-held brush and then getting into the car. Approximately 18 minutes later, his car pulls into a parking garage. On January 9, 2024 at 11:29 a.m., the video shows Cooper driving. On January 22, 2024 at 9:59 a.m., Cooper's car pulls into a parking garage. At 3:06 p.m. that day, Cooper walks down eight stairs in the lobby of the OneUnited office building while holding a bag in his right hand and without holding the railing, walks into an elevator, and out of the elevator on the sixth floor.

    4.    *OneUnited Reconfirms Cooper Cannot Sit for Deposition in December 2023*

On December 12, 2023, defendants indicated that John Trotter, OneUnited's chief financial officer, would serve as the PMQ. OneUnited explained, however, that Trotter could not testify as the PMQ as to the general counsel's personal knowledge.

On December 14, 2023, Bakewell requested that OneUnited confirm that Cooper could not sit for a video deposition due to illness. OneUnited responded that Cooper's condition "remain[ed] the same," and Trotter would provide deposition testimony as the PMQ.

5.  *Bakewell Applies Ex Parte to Compel Cooper's Deposition*

On February 6, 2024, Bakewell applied ex parte for an order compelling Cooper's deposition and the issuance of an order to show cause regarding sanctions against defendants and their attorneys for their alleged disobedience of the court's September 19, 2023 order requiring Cooper to testify.

In support of his application, Bakewell submitted the investigator's declaration and surveillance videos. The investigator declared that on three occasions, the investigator observed Cooper leave his home and drive to or towards work, and saw him leave his residence and drive on four other occasions. On January 22, 2024 at 9:30 a.m., the investigator observed Cooper leave his residence, drive to work, enter the parking lot, walk through the lobby, and take an elevator to OneUnited's floor. Bakewell also argued that the videos depicted Cooper scraping snow off a car while speaking on his cell phone and otherwise conducting himself normally.

That afternoon, defendants provided an updated redacted doctor's note stating that Cooper's medical condition affected both his physical and mental capacities. The note is not included in the record.

At the February 7, 2024 ex parte hearing, the court ordered defendants to provide Bakewell's counsel with further medical information concerning Cooper's disability by February 9, 2024, and denied the application without prejudice. Defendants did not provide the medical information by the deadline, and on February 15, 2024, the court again continued the trial and scheduled a March 8, 2024 status conference concerning Cooper's deposition.

By a March 1, 2024 email, defendants provided a fourth redacted doctor's note.  A copy of that note, which the court described as "relating to . . . Cooper's decreased concentration and lapses in memory cognition," is not in the record.

At the March 8, 2024 status conference, the court determined there was good cause to compel Cooper's deposition, "that the doctor's notes provided are insufficient to prevent the deposition from occurring," and that the deposition could proceed by remote video.

### 6. *Bakewell's March 26, 2024 Motion for Sanctions*

On March 26, 2024, Bakewell moved for an award of fees and costs in the amount of $45,905 as a discovery sanction.  In opposition, defendants argued that the notice of motion was defective because Bakewell failed to identify against which party he sought sanctions.  On May 9, 2024, the court denied the motion for fees and costs without prejudice due to the defective notice.

### 7. *Bakewell's May 23, 2024 Motion for Sanctions*

#### a. Bakewell's Motion

On May 23, 2024, Bakewell filed a motion for monetary sanctions pursuant to Code of Civil Procedure[1] sections 2023.010, 2023.030, and 2025.450.  The motion sought sanctions against Cohee, OneUnited, Cooper, and their attorneys, jointly and severally.  The motion sought $45,905 in fees and costs, which included $32,120 in investigator fees, $2,025 in medical expert fees, and $11,760 in attorney's fees.

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

Bakewell argued there was no substantial justification for defendants' opposition to the motion to compel Cooper's deposition. In support, Bakewell pointed to the surveillance videos. Bakewell also submitted a March 5, 2024 letter from Dr. Nicole Mazwi from the Department of Rehabilitation Medicine at the University of Washington. Dr. Mazwi, who had reviewed the surveillance videos and a letter from Cooper's doctor "regarding [Cooper's] back pain management and possible post-Covid syndrome," opined that "if Mr. Cooper's medical and/or psychological condition are sufficient to preclude his participation in a deposition, then in all likelihood he would not be able to adequately function in a vocational role in which significant mental and physical capacity is required on a daily basis." She also opined that it was rare for post-Covid syndrome to impact long-term memory.

b. <u>Defendants' Opposition</u>

In opposition, defendants argued Cooper's medical condition provided substantial justification for their opposing Bakewell's motion to compel. They argued that Cooper driving himself to his office was not indicative of whether he could withstand the stresses of deposition. They further argued that the investigator's report was not trustworthy as the investigator declared he observed Cooper drive to his office on January 22, 2024 at 9:30 a.m., but a doctor's note established he was at a doctor's appointment at that time. Further, Dr. Mazwi never examined Cooper, had no knowledge of his medication or job duties, and unfairly equated driving to work with being able "to withstand the rigors of a deposition." In contrast, Cooper's doctor had advised him not to appear for deposition. Defendants further argued Bakewell's fees and costs were excessive and suspect.

9

Defendants did not argue sanctions were unavailable to Bakewell for any reason other than defendants having substantial justification to oppose the motion to compel.

In support of their opposition, defendants submitted an April 26, 2024 declaration from Cooper. Cooper stated that he suffered from a "chronic back injury stemming from breaking [his] neck years ago. The pain and extent of [his] injuries worsened in 2023 because [he] contracted [C]ovid[-19] twice in that year and required higher dosages of pain medications just to remain functional. The higher dosages kept [him] in a state of fogginess, made [him] forget basic information . . . , and when not taking medications, [he] experienced such great pain that [he] could barely concentrate."

Cooper further declared that he was immobile most of 2023 until November and December, when he could finally perform some work from home and occasionally drive to the office. However, he did not work full days. "Most days, [he] took telephone calls and reviewed materials lying flat on [his] back in bed." When under stress, Cooper's "pain increase[d] to such intolerable levels" and he therefore feared that stress would cause his back to seize up.

Cooper explained that in December 2023, he was well enough to drive himself to the office. When he did so, he delayed taking medication until he arrived there. He relied heavily on his legal assistant and took extra time with projects to ensure his mental fogginess and memory lapses would not cause him to make errors. He then would lie on his office floor until the medication wore off and he could safely drive home.

Cooper declared that he attended his deposition on April 9, 2024, via Zoom from Boston, Massachusetts. Bakewell's attorney

10

questioned Cooper for nearly 10 hours. The deposition left Cooper doubled over in pain during questioning; he informed Bakewell's counsel of his pain and discomfort and that he could not provide his best testimony or recollection. According to defendants' counsel, Cooper wanted to press on "because he did not want to endure a second day of deposition."

Cooper also declared that Bakewell's counsel's characterization to the court that Cooper used a "heavy" snow shovel was exaggerated as Cooper used a hollow plastic shovel.

        c.       <u>Bakewell's Reply</u>

In reply, Bakewell argued that defendants failed to demonstrate substantial justification for their opposition and, thus, monetary sanctions were mandatory under section 2023.030, subdivision (a). Bakewell argued that defendants did not corroborate their position with any medical records and did not dispute that the surveillance video showed Cooper entering his work. Bakewell's counsel also denied that Cooper was bent over in pain during his deposition and declared he did not appear to be in any undue distress.

        d.       <u>The Court's Ruling</u>

In its written ruling, the court found monetary sanctions appropriate. It found Bakewell's costs, which included those "for the private investigator and the doctor," "were reasonably expended to obtain Mr. Cooper's appearance at deposition despite his initial contention that he was not able to attend any deposition." The court rejected defendants' contrary evidence, finding Cooper's "conclusory doctor's notes were not supported by any medical records to justify his contentions, and even after video evidence was provided which cast doubt on his assertions,

11

he did not provide satisfactory evidence of his inability to attend the deposition other than a further conclusory doctor's note."

In determining the appropriate sanctions amount, the court found the number of hours expended by the investigator (133 hours) and counsel (21 hours) were too high. It also found there was no evidence that Cohee or defendants' attorney "was aware of the true facts underlying Mr. Cooper's condition." The court therefore awarded reasonable fees and costs totaling $22,685 to be paid by OneUnited and Cooper, jointly and severally.

OneUnited timely appealed. We have appellate jurisdiction because the ordered sanctions amount exceeds $5,000. (§ 904.1, subd. (a)(12).) Cooper did not appeal, but Cohee did. Because the trial court did not impose monetary sanctions against Cohee, he is not aggrieved by the order being appealed and lacks standing. (§ 902.) We therefore dismiss Cohee's appeal. (*Six4Three, LLC v. Facebook, Inc.* (2020) 49 Cal.App.5th 109, 118.)

## DISCUSSION

### A.     General Legal Principles and Standards of Review

Under section 2025.450, subdivision (a), "If, after service of a deposition notice, a party to the action or an officer, director, managing agent, or employee of a party, or a person designated by an organization that is a party under [s]ection 2025.230, without having served a valid objection under [s]ection 2025.410, fails to appear for examination, or to proceed with it, . . . the party giving the notice may move for an order compelling the deponent's attendance and testimony." "If a motion under [section 2025.450,] subdivision (a) is granted, the court shall impose a monetary sanction . . . in favor of the party who noticed the deposition and against the deponent or the party with whom the deponent is affiliated, unless the court finds that the one

12

subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2025.450, subd. (g)(1).)

Section 2023.030, subdivision (a) states, "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. . . . If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." Section 2030.010 provides a nonexhaustive list of "[m]isuses of the discovery process," including "[f]ailing to respond or to submit to an authorized method of discovery," "[m]aking, without substantial justification, an unmeritorious objection to discovery," "[m]aking an evasive response to discovery," "[d]isobeying a court order to provide discovery," and "[m]aking or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery." (§ 2023.010, subds. (d)-(h).)

"We review an order imposing discovery sanctions for abuse of discretion, and we overturn such an order only for 'arbitrary, capricious, or whimsical action.'" (*Masimo Corp. v. The Vanderpool Law Firm, Inc.* (2024) 101 Cal.App.5th 902, 907.) Factual findings are upheld if supported by substantial evidence. (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1266.) " 'We may not reweigh the evidence and are bound by the trial court's credibility determinations.'" (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257.)

**B.    We Decline to Treat the Appeal as Forfeited for OneUnited's Failure to Provide a Complete Record**

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]  . . . 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. . . .'  [Citation.]  ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." '  [Citation.]  'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; see also Cal. Rules of Court, rule 8.124(b)(1)(B) [stating that the appellant's appendix "must contain" "any item that the appellant should reasonably assume the respondent will rely on"].)

Bakewell urges this court to treat OneUnited's appeal as forfeited due to OneUnited's failure to include in the record the briefing on the May 23, 2024 sanctions motion (the motion pursuant to which the sanctions order being appealed was issued), the investigator's surveillance videos, and some of the trial court's minute orders.  OneUnited responds that its failure to include the briefs was inadvertent, and the inclusion of the videos and minute orders in the record was not necessary as they were cumulative.

14

OneUnited's claim of inadvertence with regard to its omission of the relevant sanctions motion pleadings is somewhat hard to believe. Its opening brief pointed to the sanctions motion that the court denied without prejudice for failing to identify against whom sanctions were sought, and argued we should reverse because the court awarded sanctions pursuant to this procedurally defective motion. OneUnited omitted from both its opening brief and its appellants' appendix that Bakewell refiled the motion and that the court's award of sanctions was based on the refiled motion, not the initial procedurally defective request. After Bakewell pointed this out and filed a respondent's appendix including the actual briefing at issue, OneUnited pivoted to claim it had made an inadvertent mistake. Even if one credits that explanation, OneUnited's conduct was at a minimum quite slipshod.

Nor do we agree that the videos or the missing minute orders were cumulative. The videos are important to provide this court with a complete record on which to base its substantial evidence review, and the minute orders assist in providing context for the proceedings in the trial court. For example, the March 8, 2024 minute order omitted from the appellants' appendix memorializes the court's change in ruling from the September 19, 2023 order conditionally compelling Cooper's deposition to unconditionally compelling the deposition.

However, "[b]ecause the law favors disposing of cases on their merits" (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980), and we have sufficient information to address those merits, we exercise our discretion and decline to deem OneUnited's appeal forfeited in its entirety.

15

**C.     The Trial Court Did Not Err in Granting Monetary Sanctions Against OneUnited and Cooper**

OneUnited first argues that monetary sanctions under section 2025.450 were unjust because it notified Bakewell in advance of the noticed deposition that Cooper could not appear and served objections.  OneUnited did not make this argument in the trial court and, thus, has forfeited it.  (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 ["Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider"].)

Even if this argument was not forfeited, Bakewell also relied on sections 2030.010 and 2030.030 in the trial court.  Those sections provide an alternative basis upon which a court may impose statutory sanctions (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 74-75), and do not require the absence of "a valid objection" like section 2025.450.  On appeal, OneUnited makes no argument that these sections are inapplicable.

OneUnited next argues sanctions were improper because "[v]alid [m]edical [r]easons" provided substantial justification to oppose Cooper's deposition.  "[T]he phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact."  (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.)  The burden of proving substantial justification falls on the party claiming it acted with such justification.  (*Id*. at p. 1435.)

OneUnited points to statements in Cooper's April 2024 declaration, including the severity of his pain, the length of time

his pain caused him to be incapacitated, and that pain medication caused him to suffer a foggy mental state and memory lapses. It argues that contrary to Dr. Mazwi's opinion, Cooper's activities captured on the surveillance videos did not bear on whether his medical condition precluded him from participating in his deposition. OneUnited further argues that Dr. Mazwi's opinions, including that if Cooper could drive then he could sit for a deposition, were "not proof that Mr. Cooper was lying about his condition."

These arguments ask this court to reweigh the evidence and disregard the trial court's credibility findings. We cannot do so. (*McPherson v. EF Intercultural Foundation, Inc.*, *supra*, 47 Cal.App.5th at p. 257.) The record supports the trial court's finding that OneUnited and Cooper lacked substantial justification for their conduct. The videos do not depict, as OneUnited claims, only "fleeting moment[s] where it appeared that Mr. Cooper was not completely debilitated." They show multiple days where he is up and about, driving himself, walking and going up and down steps without difficulty, going to the office, and scraping snow off his car. Dr. Mazwi did not only opine that if Cooper could drive, then he could sit for deposition; she opined that if Cooper's condition was "sufficient to preclude his participation in a deposition, then in all likelihood he would not be able to adequately function in a vocational role in which significant mental and physical capacity is required on a daily basis." That is not some abstruse medical concept; it accords with common sense. Thus, the court had ample basis on which to doubt Cooper's claims that he could not sit for a video deposition. It provided defendants and Cooper an opportunity to present further evidence, but they did not provide an explanation that the

17

court found credible. As OneUnited has provided only one doctor's note in the record (and it is vague and conclusory), we have no basis to disagree with the trial court.

OneUnited also argues that the trial court failed to consider the facts in chronological context. We find no fault in the court's understanding of the timeline or the context in which it considered Bakewell's request for sanctions. The court made clear it was not sanctioning OneUnited and Cooper for their conduct prior to December 2023. However, in and after December 2023, OneUnited and Cooper continued to maintain without justification that Cooper could not participate in a deposition. Cooper himself admitted that by November and December 2023, his condition had improved, even if he had not entirely recovered. Nonetheless, on December 14, 2023, OneUnited claimed Cooper's condition "remain[ed] the same," and in February and March 2024, it maintained that Cooper could not participate in a deposition at all.

OneUnited argues that there was no prejudice to Bakewell from Cooper delaying his deposition. Setting aside whether Cooper ever would have sat for deposition if not for Bakewell's motion to compel, "[a] prevailing party on a motion to compel . . . need not show prejudice in order to recover monetary sanctions." (*Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 833.) "Successfully bringing the motion is sufficient to entitle the prevailing party to recover monetary sanctions unless the trial court finds the party unsuccessfully opposing the motion acted with substantial justification or the sanction ' "is otherwise unjust." ' " (*Ibid.*)

In sum, the trial court's imposition of monetary sanctions was not arbitrary, capricious, or whimsical.

**D.    Attorney's Fees for Defending Against This Appeal**

Bakewell argues we should award him his attorney's fees in connection with OneUnited's appeal.  California Rules of Court, rule 3.1702(c)(1) states, "A notice of motion to claim attorney's fees on appeal . . . under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, must be served and filed within the time for serving and filing the memorandum of costs under rule 8.278(c)(1) in an unlimited civil case," which is within 40 days after the issuance of the remittitur.  (Cal. Rules of Court, rule 8.278(c)(1).)

*Baer v. Tedder* (2025) 115 Cal.App.5th 1139 recently held that section 2023.030, subdivision (a) supplies a statutory basis for the award of appellate attorney's fees following an appeal concerning monetary sanctions under that section.  (*Baer v. Tedder*, *supra*, at p. 1146.)  *Baer* noted that section 2023.030, subdivision (a) includes as a monetary sanction " 'the reasonable expenses, *including attorney's fees*, incurred by anyone as a result of [discovery misuse].' "  (*Baer v. Tedder*, *supra*, at p. 1150.)  *Baer* explained the award of appellate attorney's fees is necessary to satisfy the remedial and compensatory purpose of the discovery sanction statutes.  (*Id*. at p. 1152.)  "An appeal of an award of monetary sanctions forces the litigant awarded those sanctions to incur yet more attorney's fees to preserve an award intended as compensation for expenses incurred as a result of the sanctioned litigant's misuse of the discovery process.  An award of appellate attorney's fees therefore would be necessary to provide full compensation to the litigant awarded sanctions." (*Ibid*.)

*Baer* explained, "Appellate attorney's fees are recoverable under section[] 2023.030[, subdivision ](a) . . . , not because pursuing an appeal constitutes a misuse of the discovery process,

19

but because an award of appellate fees is necessary to fully compensate the party receiving the sanctions for its expenses incurred as a result of the sanctioned party's misuse of the discovery process.  A trial court, having initially declined to find the sanctioned party acted with substantial justification, need not and should not consider substantial justification in awarding appellate attorney's fees."  (*Baer v. Tedder*, *supra*, 115 Cal.App.5th at p. 1152.)

Citing *Baer,* Bakewell asks this court to "order defendants to pay his reasonable attorney['s] fees for defending this appeal, in an amount to be decided by motion after remittitur."

In response, OneUnited does not disagree with *Baer*'s rationale.  Instead, it argues that the *Baer* court declined to impose sanctions because it held the appeal was " 'not totally and completely without merit,' " suggesting that this court similarly should not impose sanctions.  OneUnited misreads *Baer*, which affirmed (with modification) the trial court's order of monetary sanctions for discovery misuse in the form of appellate attorney's fees. (*Baer v. Tedder*, *supra*, 115 Cal.App.5th at p. 1146.) Separately, *Baer* declined to impose sanctions on the basis that the appeal was frivolous.  (*Id*. at p. 1166.)

In accord with *Baer*, we award costs, including appellate attorney's fees, to Bakewell to be paid by OneUnited.  After the issuance of the remittitur, Bakewell may bring a motion in the trial court to establish the amount of such costs and fees in accordance with California Rules of Court, rules 3.1702(c) and 8.278(c).

## DISPOSITION

The order granting Bakewell monetary sanctions of $22,685, payable by OneUnited and Cooper, jointly and severally,

20

is affirmed.  Cohee's appeal is dismissed.  Bakewell is awarded his costs, including appellate attorney's fees, on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.